## TRUMBULL STEEL CO. v. UNITED STATES.

### No. L-177.

Court of Claims.

Nov. 14, 1932.

Edmund B. Quiggle, of Washington, D. C. (William M. Williams and Williams, Myers & Quiggle, all of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover $369,773.43, money received by the government and applied on plaintiff's taxes for 1917. The material facts in the case are as follows:

On March 28, 1918, the plaintiff filed its corporation income and excess profits tax return for the year 1917 showing a tax liability of $1,937,732.21 which was shortly thereafter paid by plaintiff, but the Commissioner of Internal Revenue on March 21, 1923, assessed an additional tax liability of $369,-773.43. On April 6, 1923, the plaintiff filed a claim of abatement of the additional tax so assessed. This claim in abatement was rejected and the Commissioner having found that overassessments had been made against the plaintiff for the years 1918, 1919, 1920, and 1924, these overassessments were credited against the tax assessment for the year 1917 and cash payment was made of the remainder of the overassessment by the plaintiff voluntarily and without protest. All of these credits given on the 1917 tax on account of overassessment for other years and the two cash payments made thereon, being respectively $119,733.19 and $15,520.67, were credited or paid more than five years after the filing of the return for the 1917 taxes. These credits and cash payments equaled the amount of the taxes assessed for the year 1917, but the Commissioner made an additional claim for interest in the amount of $110,154.53 on the additional assessment against plaintiff for that year. On March 11, 1927, the plaintiff made an offer of compromise in the sum of $2,000 in settlement of the liability for interest which had been alleged by the government. After all of the additional assessment for 1917 had been paid by the credits and cash payments above referred to, the defendant accepted the offer of $2,-000 in compromise of the liability for interest and the whole matter was apparently closed, the cash payments having been made voluntarily by the plaintiff and no intimation of any objection to the credits having been made. In this suit, however, the plaintiff now claims that the settlement was void and of no effect. The plaintiff has filed a claim for refund specifying in its claim that it is for the taxes of 1917, 1918, 1919, 1920, and 1924 (the last four years being the years for which overassessments were allowed), and seeks to recover the full amount of the credits for overassessments and the cash payments made on the taxes of 1917 on the ground that such credits were made and the money collected after the period of limitations for the collection of the taxes of 1917 had expired.

The case turns, as we think, upon the validity of the settlement made between the parties. Counsel for plaintiff contend that defendant had no legal right to apply either the credits for the overassessments, or the cash payments made, upon the deficiency in the amount assessed on the 1917 taxes, and that a suit to recover the amount of this deficiency and interest could not have been successfully maintained. As the law now stands this must be conceded. The payments were all made more than five years after the 1917 return had been made. The period of limitation for collection of the 1917 tax under the Revenue Act 1921 (section 250 (d), 42 Stat. 264), had therefore expired, and while section 278 (d) of the Revenue Act 1924 (26 USCA § 1061 note) provided that if the assessment was made in time (as it was in the case at bar)

the tax could be collected within six years from the time of the assessment, it also contained in section 278 (e), of the Act 1924 (26 USCA § 1062 note), a somewhat contradictory provision that in cases where either the assessment or the collection was barred by the statute of limitations when the 1924 act was enacted "this section" should not apply. But the actions of both plaintiff and defendant showed that neither party considered at that time that the collection of the tax was barred by the statute of limitations. Plaintiff tried first to get the additional assessment abated, and when its plea for abatement was overruled paid the amount of the tax and endeavored to get a settlement for a small sum of the amount of interest which the defendant claimed. At no time was there any suggestion on the part of plaintiff that indicated that defendant was insisting on an unenforceable claim and the defendant on its part proceeded as deliberately as if it had six years from the time the assessment was made in which to make the collection. It is said that Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, had already held that the defendant had no right to the money voluntarily paid on the additional assessment. This is not correct. This case merely held that under the 1921 act, when the period of limitation had expired, defendant could not retain taxes which had been collected by distraint after the expiration of that period. Unquestionably the same rule would apply to any instance where the statute of limitation had expired under the law as it stood at the time when this decision was rendered. But the application of the 1924 act had not been definitely settled at the time the payments in the case at bar were made, and, considering the fact that section 1106 of the Revenue Act of 1926 (26 USCA § 1249 note) was then in force, the whole legal situation was at that time in doubt, for after these payments had been made, it might have been questioned whether, under the law as it stood when the settlement was entered into, section 1106 of the 1926 act would not have prevented any refund because the tax was not overpaid. It should also be kept in mind all through that the plaintiff merely paid the tax which was originally properly assessed and later, after filing a claim in abatement and making a long plea as to why it should not pay the interest provided by law, obtained a settlement of the interest on payment of a small amount.

Thus we have a situation in which a settlement was made, sums were collected or the defendant received amounts which al-

though originally due, at the time could not have been recovered by the defendant if the trial had then been had in the courts. It is not necessary, however, that defendant should show that it was able to recover something upon the claim in order to retain the proceeds of the settlement. In 12 C. J. p. 329, § 18, it is said: "It is clear, however, that the claim need not be valid in the sense that claimant be able to recover on it, and it is not material that the other party may have a good defense; or that a subsequent judicial decision may show the rights of the parties to have been different from what they at the time supposed; or that one of the parties may afterward find out that he might have obtained a judgment more favorable to him by trying out the claim on its merits." Further, in section 19, p. 331, it is said: "According to the great weight of authority, it is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful and that, at the time of the compromise, they in good faith so consider it. *It is not essential that the question be in fact doubtful in legal contemplation.*" (Italics ours.)

In testing the validity of the settlement we must consider the circumstances and the law then applicable thereto. On plaintiff's behalf it seems to be assumed that defendant had no right to retain the sums credited or paid. Conceding for the sake of the argument only that the courts would now so hold, we think it may be properly said, as stated above, that there was at that time more or less doubt about the matter. Subdivision (a) of section 1106 (26 USCA § 1249 note) provided that the bar of the statute of limitations with reference to any internal-revenue tax should not only operate to bar the remedy but to extinguish the liability, but it also provided that "no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax." We do not need to determine the effect of these somewhat inconsistent provisions. The plaintiff had not overpaid the tax. Independently of the question of whether the six-year limitation might apply, both plaintiff and defendant might well have considered that under all of the circumstances of the case it was doubtful whether the plaintiff could recover back the sums that had already been paid without regard to the interest, and the plaintiff might well have considered that under such circumstances the best thing to be done was to close the case for a small sum if settlement could be obtained on such terms. On

the part of defendant's officials it might have been thought and considered that the government could probably retain what had already been paid and recover the interest which it claimed; but as the delay in payment had not been entirely the fault of plaintiff it was hardly fair to collect the full amount, and on the whole it was well to accept a compromise offer of a small sum providing the case was completely closed and ended. It should be observed, in this connection, that in order to sustain the compromise it is only necessary that the parties negotiating the compromise considered the claim doubtful and it is not necessary that the court should hold that it was in fact doubtful under the law applicable thereto. It is true that, as stated in section 20, p. 332, 12 C. J.: "A claim as to which the doubt or dispute arises must be asserted honestly and in good faith."

In other words, if the party receiving the benefits of the settlement knows that he has no claim, the making of the claim and the settlement may constitute a fraud upon the other party which will justify the court in setting the settlement aside. But the evidence fails to show that such a condition existed, and under the law as it stood at that time defendant had good cause to believe that at the time the settlement was made it could retain every dollar that had been paid.

Quoting again from 12 C. J., § 21, p. 333, it is said: " * * * a claim is honest if the claimant does not know that his claim is a mere nothing," and "if both parties know all the facts and with knowledge of those facts obtain a compromise, it can not be said to be dishonest."

It is urged on behalf of plaintiff that a knowledge of the law is presumed and that the government officials at least ought to have known that they were not entitled to retain the funds that had been credited and paid. What we have said above shows that we are not disposed to agree with the conclusion that the government officials should have known they were not entitled to retain these funds and in effect it is contrary to the findings which we have made. Moreover, if we were to concede that such was the fact it would not help plaintiff's case.

In section 20 of 12 C. J., the rule is laid down that: "The presumption of knowledge of the law can not be availed of in order to show that a person asserting a claim had knowledge of its invalidity." And it is well said in Smith v. Richards, 29 Conn. 232, 239, that the ordinary rule that a man cannot plead ignorance of the law has no application

to bona fide compromises or settlements "the very object of which is to avoid the uncertainty of the law, when perhaps there is no uncertainty as to facts. It could never be endured that bona fide arrangements of this kind should be held to be of no validity."

The questions of whether the claim was asserted in good faith, or whether it was fairly and deliberately made, are questions for the jury to determine (12 C. J. § 20); or where the case is tried by the court to be determined by the court. Neither bad faith nor fraud are ever presumed and there is nothing in the evidence to show that the government officials were making the claim in bad faith, and we have so found. The law as stated above has been applied by the Supreme Court in Hennessy v. Bacon, 137 U. S. 78, 85, 11 S. Ct. 17, 19, 34 L. Ed. 605, where the opinion of the court concedes that if the plaintiff had taken his case to the courts he must have been successful, but having settled it, the Supreme Court said: "Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained."

We are therefore of the opinion that the settlement was valid.

It is urged, however, on the part of the plaintiff that conceding the settlement to be valid, it settled nothing but the interest under the statements made therein. We do not concur in this construction of the wording of the proposition submitted by plaintiff and the language accepting it. On this point the case is controlled by the opinion in Heber Hord v. United States, 59 F.(2d) 125, 128, decided by this court June 6, 1932, where the terms of the proposition of settlement, so far as they relate to the point in controversy, were exactly the same. The proposition of compromise made by the plaintiff stated that the deficiency in the tax had been paid "without recourse." Counsel for plaintiff discuss the meaning of this language and show in their argument that when used in an indorsement on promissory notes it has no meaning which is applicable to this case. But we are obliged to give this language some meaning if we can consistently do so considering all of the other language used and the circumstances of the case. Even if we concede that these words as used in the proposition of settlement are ambiguous, we are still bound to determine what the parties intended unless there is no evidence from which such intention can be determined. When we consider all of the cir-

cumstances of the case, we are forced to the conclusion, as the court was in the Hord Case, supra, that the acceptance of the proposition by the commissioner "was conditioned upon payment of the tax without recourse," meaning that the plaintiff would thereafter have no claim upon the government to recover the amount so paid. Besides this, the commissioner in accepting the offer of compromise stated that it was decided, "with the advice and consent of the Secretary of the Treasury, to accept the amount [heretofore paid and] deposited in full settlement of the liability *and so close the case."* (Italics ours.) The evidence shows that there was no intimation on the part of the plaintiff that it intended to make any further claim in the case. Taking all of the circumstances of the case into consideration, we have concluded that both parties intended to finally settle all matters with reference to plaintiff's taxes for 1917 by this compromise and have so found.

 One other matter needs to be mentioned. It is urged on behalf of plaintiff that under the law of 1928 and the decision of this court in Parks & Woolson Machine Co. v. United States, 58 F.(2d) 868, decided May 31, 1932, the credits upon the deficiency in the tax of 1917 were void and that when the certificates of overassessment were made such certificates constituted an account stated and plaintiff had six years in which to commence suit for their recovery.

For the purposes of the argument we may concede that if we consider these certificates of overassessment by themselves and apart from other transactions in the case they constituted an account stated and showed that the government held money belonging to plaintiff in the amounts certified. But the fact that the government holds money belonging to a taxpayer does not prevent its applying the money on other taxes assessed against him. In fact, this is being done every day, and when such action is taken, unless there is something in the law as applied to the circumstances which provides otherwise, the government can and does retain the money so applied. In the case at bar there are two matters which enable the defendant to retain the funds of the plaintiff so applied. The first is that under section 1106 of the Revenue Act 1926, even though the collection of the tax was barred and the liability extinguished, there can be no refund where the taxpayer has not overpaid the tax. The second matter is that the whole controversy between the plaintiff and defendant over the taxes of 1917 had been finally settled by the

compromise agreement. It is contended on behalf of plaintiff that the act of 1928 made such an application of the overassessments void. But, as stated above, the act of 1928 was not in force at the time the settlement was made. It is true it repealed section 1106 of the 1926 act as of the date of its passage, but, as we have stated in the Hord Case, supra, sections 607 and 608 of the Revenue Act of 1928 (26 USCA §§ 2607, 2608) have no application to cases where prior to the enactment of the 1928 act a settlement had been effected between the parties. Manifestly the 1928 act was not intended to set aside and render void agreements that had been entered into between the taxpayer and the government.

The defendant contends that the plaintiff is not entitled to maintain this suit for the reason that prior to the commencement of the action it had sold and transferred to another party all of its assets, including choses in action, and that section 3477 of the Revised Statutes (31 USCA § 203) makes every such assignment or transfer void. On behalf of the plaintiff it is argued that if the transfer is void the plaintiff still has the right to maintain the action, leaving its accountability to the assignee to be determined hereafter. The conclusions that we have stated above make it unnecessary that we should determine the effect of the conveyance executed by the plaintiff.

The petition of the plaintiff must be dismissed, and it is so ordered.