**DAVIDSON CORPORATION**

v.

**The UNITED STATES.**

**MERGENTHALER LINOTYPE COMPANY**

v.

**The UNITED STATES.**

Nos. 177–54, 546–58, 75–59.

United States Court of Claims.

Dec. 5, 1962.

———◇———

Temple W. Seay, Washington, D. C., for plaintiffs. R. Donald Reich and Robert J. O'Connell, Brooklyn, N. Y., on the briefs.

Philip I. Brennan, Atty., Dept. of Justice, with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., on the brief.

WHITAKER, Judge.

The controversy before us concerns the applicability of an excise tax to certain machines, manufactured by Davidson Corporation prior to 1953, and thereafter by Mergenthaler Linotype Company, of which the Davidson Corporation in 1950 had become a wholly-owned subsidiary. Although Mergenthaler took over the manufacture of these machines in 1953, with Davidson functioning as a sales subsidiary, the machines continued to be marketed under the Davidson name. Both Davidson and Mergenthaler filed suits in this court for refund of excise taxes each paid during the 1950–1959 period. These suits were consolidated for trial on the merits.

The determination of the case depends solely upon the resolution of a single issue: whether certain Davidson machines [1] were, during the period covered by the claims, "duplicating machines" within the purview of Section 3406(a)(6) of the Internal Revenue Code (1939) and its counterpart, Section 4191, Internal Revenue Code (1954), both of which follow.

Internal Revenue Code of 1939:

"Sec. 3406 [as added by Sec. 551, Revenue Act of 1941, c. 412, 55 Stat. 687, and as amended by Sec. 615, Revenue Act of 1942, c. 619, 56 Stat. 798]. Excise taxes imposed by the Revenue Act of 1941.

"(a) IMPOSITION.—There shall be imposed on the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the rate on the price for which sold, set forth in the following paragraphs (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof):

\* \* \* \* \* \*

"(6) *Business and store machines.*—Adding machines, addressing machines, autographic registers, bank proof machines, billing machines, bookkeeping machines, calculating

1. Model 221 (241) and its derivatives (including Model 225) and Model 233.

machines, card punching machines, cash registers, except cash registers of the type used in registering over-the-counter retail sales, change making machines, check writing machines, check signing machines, check canceling machines, check perforating machines, check cutting machines, check dating machines, other check protector machine devices, computing machines, coin counters, dictographs, dictating machine record shaving machines, dictating machines, duplicating machines, embossing machines, envelope opening machines, erasing machines, folding machines, fan-fold machines, fare registers, fare boxes, listing machines, line-a-time and similar machines, mailing machines, multigraph machines, multigraph typesetting machines, multigraph type justifying machines, numbering machines, portable paper fastening machines, pay roll machines, pencil sharpeners, postal permit mailing machines, punch card machines, sorting machines, stencil cutting machines, shorthand writing machines, sealing machines, tabulating machines, ticket counting machines, ticket issuing machines, typewriters, transcribing machines, time recording devices, and combinations of any of the foregoing, 10 per centum."
[26 U.S.C. 1952 ed., Sec. 3406.]

Internal Revenue Code of 1954, Subchapter E, Part I, Business Machines:

"Sec. 4191.  IMPOSITION OF TAX.

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof), a tax equivalent to 10 percent of the price for which so sold:

Adding machines.
Addressing machines.
Autographic registers.
Bank proof machines.
Billing machines.
Bookkeeping machines.
Calculating machines.
Card punch machines.
Cash registers.
Change making machines.
Check writing, signing, canceling, perforating, cutting, and dating machines and other check protector machine devices.
Computing machines.
Coin counters.
Dictagraphs.
Dictating machines.
Dictating machine record shaving machines.
Duplicating machines.
Embossing machines.
Envelope opening machines.
Erasing machines.
Folding machines.
Fanfold machines.
Fare registers and boxes.
Listing machines.
Line-a-time and similar machines.
Mailing machines.
Multigraph machines, typesetting machines and type justifying machines.
Numbering machines.
Portable paper fastening machines.
Payroll machines.
Pencil sharpeners.
Postal permit mailing machines.
Punch card machines.
Sorting machines.
Stencil cutting machines.
Shorthand writing machines.
Sealing machines.
Tabulating machines.
Ticket counting machines.
Ticket issuing machines.
Typewriters.
Transcribing machines.
Time recording devices.
Combinations of any of the foregoing."

[26 U.S.C. 1958 ed., Sec. 4191.]

It is the Government's contention that these machines are store and business machines, i. e., "duplicating machines" which were properly subject to the tax. The plaintiffs take the position that said machines are printing presses and not duplicating machines.

It is plaintiffs' view of the case that once we have classified these machines as either printing presses or "duplicating machines", such classification determines whether or not the excise tax is applicable. Or, to put it another way, if we should find these machines to be printing presses, it necessarily follows that they were not subject to the excise tax. In oral argument and in their brief plaintiffs stress that the case was tried on a stipulated issue: " * * * whether or not the machines manufactured and sold by the plaintiffs during the periods covered by the claims under consideration (February 1950–March 1959) were store and business machines, i. e., 'duplicating machines' within the meaning of Section 3406(a) (6), Internal Revenue Code (1939) and its counterpart, Section 4191, Internal Revenue Code (1954), as the defendant contends, or whether they are printing presses, as plaintiffs contend, which are not subject to the tax under the foregoing Sections." It is apparent from a reading of the statutes that "duplicating machines" are subject to the tax; however, the statutory interpretation of whether specific machines come within that category is the province of the court and cannot be disposed of by stipulation of the parties.

We adopt the Commissioner's fact findings with slight modifications. In summary, they are as follows:

From its incorporation in 1916 until approximately 1940, Davidson manufactured and sold paper-feeding devices which were invented by its founder, William Ward Davidson, Senior. Between 1924 and 1940 these feeders were purchased by the American Multigraph Corporation and its successor, Addressograph-Multigraph Corporation, for incorporation in their Multigraph Machines. In the latter five years of the above period, over 97 percent of all Davidson's sales were made to Addressograph-Multigraph Corporation, of which the Friction Feeder and the Suction Feeder were the dominant products.

During the mid-1930's, Davidson performed development work on a variety of products, one of which was a small rotary printing machine which it planned to market primarily as a business or office machine in business concerns which required a substantial amount of reproduction work. This intention is found in the registration statement, as amended, which Davidson filed with the Securities and Exchange Commission in 1939, in connection with issues of common stock, in which statement Davidson indicated the machine would probably be called the "Davidson Duplicator." A subsequent statement filed by Davidson in 1940, in which were repeated references to its "duplicators", indicated that the "Davidson Duplicator" was practically ready for production.

In 1940 Davidson marketed its Model 221 under the name of "Davidson Dual Duplicator," thereby professing the two-purpose nature of the machine—lithographic and letterpress. This machine could print on paper ranging in size from 3 by 5 inches to 10 by 14 inches, and provided reproduction either from offset plates or from type, electrotypes, rubber plates, etc., as distinguished from stencil or liquid duplicators or machines of the hectograph type. The advertisements of the 221 not only pointed out these characteristics, but stressed the advantage of offset duplication for office use, where office forms, stationery, form letters and advertising literature were used to any great extent, and the relative simplicity of operating the machine.

Priorities created by the war emergency restricted the market to the extent that the Federal Government became Davidson's most potential customer, but only for sale of "duplicating machines". As all Government printing was required to be done by the Government Printing

Office, the purchase of printing presses was restricted, but the various departments and agencies could purchase machines commonly considered as doing "duplicating" work of the kind frequently performed in businesses and offices for relatively short run reproduction. Thus Davidson during the war years strongly emphasized that its 221 was a "duplicator" for office use.

Davidson continued to seek the office market in the years following the war and after its 1950 merger with Mergenthaler. The development and marketing of the de luxe Model 251 was accomplished after the merger, which model was designed primarily to eliminate noise and exposed parts, which were objectionable in the 221.

While Davidson was characterizing its machines as "duplicators" and for a period of time thereafter, none of its advertising appeared in the various printing trade media. It did appear, however, in such office equipment publications as "The Office Management and Equipment Purchasing Guide," which listed Davidson's machines under "Machines, Duplicating, Offset." Other publications carrying Davidson advertising were "Office Appliance Buyers Guide", "Time Magazine", "The Office", "Nation's Business", "American Business" and "Business Week."

Shortly after the merger, Mergenthaler realized the vast possibilities of the Davidson machines in the arts field, with their capacity to produce work comparable to larger and more complex conventional printing presses, and directed its sales activities in this direction, as well as toward the office equipment field and those businesses which operated their own printing shops (commonly called "captive printing shops"). To implement this effort toward increasing sales in the commercial printing field, the word "Duplicator" was dropped, and the machines were advertised as "Davidson Dual."

During the 1950–1954 period, Davidson's advertising material pertaining to Model 221 and the larger Model 233 was as follows:

"Letterheads—Labels—Envelopes—Bulletins—Office Forms—Advertising Folders—Price lists—Form letters—Post cards—Announcements. Print them all on a Davidson Dual."

Advertising referring only to its small Model 241 (221) [2]:

"(1) Only Davidson gives you both offset and letterpress printing and duplicating. You won't find a more versatile press anywhere than Model 241. * * * It's easy to see why the Standard Davidson Dual can turn out fine printing and duplicating at high speed and low cost."

Advertising that referred only to Model 251 [3]:

"New streamline design finished in handsome Davidson grey.

"It's a handsome piece of equipment, this sleek, streamlined *business machine* [italics ours] with its rich grey finish. * * * You'll find this new model considerably more quiet running.

"*Both Printing and Duplicating*— The Davidson Dual is the ideal press for turning out long or short runs of such things as letterheads, envelopes, advertising literature, labels, office forms, * * * and a host of other small printed matter. *Then, in addition, the Davidson Dual does the very finest duplicating* [italics ours] * * * form letters, sales bulletins, bills of material, engineering drawings, reports, publicity releases, maps, charts etc. Anything that can be typed, written, ruled or drawn can be reproduced quickly * * * a few copies or thousands * * * using low cost paper masters * * * every

2. Model 241 is the Model 221 with refinements added.

3. Model 251 in the de luxe version of the 241 (221).

copy from first to last is an exact duplicate of the original."

In 1954 the name of the machines was changed to "Davidson Dual-Lith" which name is presently used. The sales literature after 1954 for Models 241 (221) and 233, the latter of which is essentially the same as 241 except that it is larger and more rugged, continued to stress the ease and simplicity of operation to promote their utility in the business office market. A typical excerpt is as follows:

"Q. Can ayone use the Davidson Dual-Lith?

"A. The precision enineering and sturdy construction of the Davidson Dual-Lith have made it appeal to printers, of course, but these same features, together with its simplicity and ease of operation, make it the preferred small offset equipment for business, for office applications, for Government and for schools as well. The Davidson Dual-Lith is the ideal general purpose small offset machine for both short and long runs."

Plaintiffs' advertising of the above nature appeared in such publications as "Graphic Arts Monthly," "The Office," "Nation's Business," "American Business," "Time Magazine," "Burroughs Clearing House," "Editor and Publisher," "Inland Printer," "American Printer," and "Business Week."

The foregoing relates how plaintiffs characterized their machines up through the last of the years in question. We shall now relate plaintiffs' dealings with the Bureau of Internal Revenue relative to the taxability of these machines.

In August 1945, Craftsman Press, Inc., a commercial printing establishment which was a prospective purchaser of Davidson Model 221, sought a ruling as to the applicability of the excise tax to this machine, as equipped for offset work. The Deputy Commissioner of Internal Revenue ruled that the machine was subject to the tax, stating that the "inherent characteristics" of a machine was the determining factor of taxability —not the "use to which the machine may be put after the sale."

During all the years in controversy here (1950–1959) the excise tax on these machines was paid. However, in 1950 Davidson had requested a ruling on the taxability of its tandem Model 225. Basing its decision on the description and specifications as set out in the request letter, which stated that "the machines are designed for and will be sold to the graphic arts industry and they are used by printers or companies owning printing shops," the Bureau of Internal Revenue ruled that the machines were not subject to the excise tax. In 1952, the Bureau revoked this ruling, holding the machines taxable. This new ruling was based upon a report from an internal revenue field agent who found the tandem Model 225 as having the same general specifications and being adaptable to the same operations as the Model 221 "which is taxable." By letter dated February 28, 1952, the Deputy Commissioner also held Model 233 to be subject to the excise tax.[4]

In 1951 Davidson filed a claim for refund in the amount of $7,958.86 with respect to its tandem Model 225, covering the period between February 28, 1950, and November 30, 1950. This claim was rejected both because the Commissioner had ruled on February 28, 1952, that the machines were taxable and for lack of compliance with section 3443 (d) of the Code, which requires that a person establish his claim by alternative methods, one of which is by procuring customer consent. On May 4, 1954, Davidson filed an amended claim for $4,346.80 based upon those customer consents which it had been able to obtain. Three days later Davidson filed a petition in this court for $4,346.80, the amount of the amended claim. The Commissioner has not ruled on the amended claim.

---

4. This ruling was reconsidered and reaffirmed on August 8, 1952.

On August 28, 1956, Davidson filed a claim for refund on Models 225, 221, 241, and 233. Shortly before filing, Davidson and Mergenthaler had joined in a request to Internal Revenue Service for reconsideration of the rulings on Models 225 and 233, and asked for a ruling on Davidson's other Dual-Lith models. This was Davidson's first attempt to have its Model 221 (241) declared tax exempt.

In 1957 both Davidson and Mergenthaler filed individual claims for refund with respect to the manufacturers' excise taxes which each had paid on Models 223, 224, 225, 241, 251, and 233. Again they jointly requested reconsideration of the taxability of Models 225 and 233, as well as a ruling on Models 221, 223, 227, 237, 241, 242 and 251. The Internal Revenue Service refused to make any further ruling on the Davidson machines until the question of the taxability of the tandem Model 225, pending before the Court of Claims, had been decided.

On December 16, 1958, Davidson filed its petition in this court for $73,495.07 covering its 1956 and 1957 claims for refund. On February 16, 1959, Mergenthaler filed its petition in this court for $225,164.99 covering its 1957 and 1958 claims for refund.

The Government concedes that the manufacturers' excise tax does not apply to any type of printing machine or press which, considering the quality of work performed, its construction, size, weight, required skill of operation, price, and the market sought, is normally associated with commercial print shop operations. However, the Government's position in regard to the machines in issue is that they are not commercial printing presses, but are duplicating machines within the meaning of the statutes. The plaintiffs maintain that the machines are printing presses which are not subject to the tax.

In the commercial world it is usually unnecessary to distinguish between "printing" and "duplicating," and the terms are frequently used interchangeably. Generically, any multiple reproduction process is a type of duplicating process.

In the trade, however, certain types of processes are commonly referred to as "duplicating" and the machines performing such processes are generally known as "duplicators." Such machines are considered to be types of business or office machines which are used principally for internal short run work. Consequently, manufacturers appealing to the "office market" tend to advertise their machines as "duplicators."

Originally, the machines most commonly falling into this category were those employing stencil and spirit processes, such as the mimeograph and ditto machines. The products of these machines are readily distinguishable from the products of the printing process, whether letterpress or offset, by the quality of work performed and the types of ink and paper used. However, in recent years the manufacturers of stencil and spirit process duplicators have also developed machines to perform offset reproduction with a variety of plates, including paper plates on which the image can be prepared by a regular typewriter. The product from these machines is indistinguishable from the product of "printing presses" performing offset reproduction by the same method. Since, for relatively short run work, there is wide use of the paper plates on which the image may be produced directly with a typewriter or by other direct application, the trade frequently considers the use of the offset principle with direct image paper masters as within the duplicating category, and the process is known as "offset duplicating."

On the other hand, a great deal of long run work by commercial printing shops is accomplished by offset lithography with reverse image photomechanical negatives or plates. Such process is normally not considered by the trade as "duplicating". This process is now em-

ployed for much of the work that was previously done by letterpress.

The evidence amply illustrates that the Davidson machines, while employing one process, are capable of performing work indistinguishable from work done by commercial printing presses; however, these machines, while employing another process, are also capable of performing work indistinguishable from that done by machines classed by the trade as duplicators. We would seem to be left with a hybrid machine, which is both a printing press and a duplicator. It appears that this is the inventor's conception of his machine. In 1941, in his application for a patent on a "Printing Press", Mr. Davidson stated, in part:

"The subject matter of this invention is a two-purpose duplicator capable of doing both direct and offset printing. For direct printing, the raised type, or so-called 'letterpress' process, is ordinarily used; and for offset printing, the lithographic process is preferred.

"Most, if not all, duplicators on the market before this invention were one-purpose machines. They could do either letterpress printing, directly from a raised type plate to the sheet being printed, or they could do offset lithographic work in which the positive image on the lithographic plate is first transferred to a rubber blanket and then to the sheet being printed. They cannot, however, do both direct and offset printing.

"The offset lithographic process is rapidly displacing direct letterpress printing for reasons unimportant here, but there are some printing jobs which, by reason of inherent limitations in the lithographic process, or because of cost, are almost necessarily performed by the letterpress process. Printing just a few words in a blank left in previously printed pamphlets, cartons, and the like is one such instance. This is called 'imprinting.'

"Large printing shops can afford to have both lithographic presses and letterpress machines, *but there is a large demand in smaller printing establishments, and in stores, manufacturing plants, business houses, and the like, for a single, relatively small, moderately priced duplicator capable of doing quality printing by either the letterpress or lithographic processes.*

"A two-purpose duplicator designed for and used largely in this specialized field will, in most instances, be operated by persons skilled only slightly, if at all, in the printing field, and hence one of the paramount objects of the invention is to so organize, construct, and arrange the essential elements and mechanisms of the machine that it is characterized by simplicity, ease of adjustment, convenience of operation, and the speed by which it can be converted from a direct printing letterpress machine to an offset lithographic machine, and vice versa.

"To achieve the broad objects of a two-purpose machine, the conventional employment of three printing cylinders is discarded, and, instead, only two cylinders are used, one being larger than the other and preferably having a diameter that is twice that of the smaller cylinder. The *larger cylinder or drum is provided* with removable plate and platen segments, while the smaller drum carries a blanket. When the machine is used for lithographic offset printing, a plate is mounted on the plate segment, and during one-half the revolution of the large drum the image is transferred to the blanket, and during the next half revolution of the large drum the blanket transfers the image to the sheet being printed.

"To convert the machine into a direct printing letterpress duplicator, the platen segment is removed,

and in its place a direct printing letterpress segment is substituted. * * *" [Italics ours.]

The excise tax statutes under both the 1939 and the 1954 Code do not expressly name nor do they expressly exclude "printing presses." The specific heading under the 1939 Code is "Business and store machines," while under the 1954 Code the heading is simply "Business Machines." Each is followed by listings in general categories of types of machines which are commonly found in a business office or store, and are designed for use therein, although many of them are also used extensively elsewhere. It is our interpretation of the statutes that Congress intended to include all machines designed for and generally used in a business office or store. We feel that, regardless of whether a machine is called a "small printing press" or a "duplicator", any machine which employs a duplicating process which is of primary import, and which is designed for and used in a business office or store, is properly classified as a duplicator within the purview of the excise tax statutes and subject to the tax. There is little doubt that the Davidson machines meet this test.

The statements filed with the Securities and Exchange Commission and the various patent descriptions on the "Printing Presses" explicitly state that Davidson's intention was to design a printing machine for use in business offices and stores. He carefully explained the simplicity of operation, the high speed and quality of the work product, and the cost which was low enough to make its use by business offices economical.

The advertisements and the periodicals in which they appeared bear out the conclusion that Davidson sought the business machine market. For ten years the machines carried the name "Davidson Dual Duplicator" and the advertisements appeared only in trade publications and the office equipment trade media. While in 1950 Davidson dropped the name "Duplicator" and its advertisements appeared in periodicals of the graphic arts industry, they continued to be published in the business and office equipment publications. It was after the 1950 merger with Mergenthaler that the de luxe Model 251 was produced and marketed. It was advertised to stress the quietness of the machine and the handsome grey finishing, such characteristics being very significant in a business office machine, though of little consequence in the commercial printing industry.

That Davidson was successful in the office machine market is evident from the sales statistics taken from Davidson's own records. Likewise, in a letter dated December 4, 1951, wherein Davidson requested a ruling from the Internal Revenue Service (then called the Bureau of Internal Revenue) as to the taxability of its Model 233, Davidson made the following statement:

"With respect to the Davidson Dual Model 221 tax has been collected and paid on all sales of this model, since a considerable portion of the sales of this machine have been for use as office equipment. However, no ruling has ever been specifically requested nor obtained with respect to this model. In like manner and for similar reasons, we have collected and paid tax on all sales of the Model 251 Davidson Dual."

The mere changing of a name, while the basic nature of the machine remains unchanged, is inconsequential. By the time Davidson dropped the name "Duplicator" in 1950 and advertised its machines, first as "Davidson Dual" and later as "Davidson Dual-Lith", it was well established in the business machine field.

The Davidson Model 221 (241) and Model 233 are the basic machines. The other models, bearing different numbers, are derivatives or variations of the basic models. The Model 233, sold by Davidson in 1952, is essentially the same as Model 221 (241) except that it is a larger and more rugged machine which will accept paper up to size 14 by 17½ inches.

The fact that this particular model or any of the others are being sold to commercial printers as well as to the office equipment market has no relevant bearing on the issue. The statutes do not require that the machines have but a single purpose and utility.

The question presented to us in this case has not been presented to us before and, so far as we have been able to ascertain, to any other court. While the machine was capable of doing the work of a printing press, it undoubtedly was designed for use and was capable of being used as an ordinary duplicating machine. If so, it is subject to the tax.

It is, therefore, our determination that the excise tax paid by plaintiffs on the Davidson machines in issue was proper, and plaintiffs' claims for refund thereon are denied.

Plaintiffs' petitions will, accordingly, be dismissed with prejudice.

JONES, Chief Judge, and DAVIS, DURFEE and LARAMORE, Judges, concur.