Ralph RUSSELL
v.
The UNITED STATES.
No. 432–59.

United States Court of Claims.
July 12, 1963.

David Rein, Washington, D. C., for plaintiff.

Hugh R. Kincaid, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

The issues in this case have been narrowed to the following questions: (1) Was there a binding agreement between plaintiff and defendant to dispose of this case on the basis of Vitarelli v. United States, 150 Ct.Cl. 59, 279 F.2d 878 (1960), and if there was such an agreement, was it binding on the court in view of the court's later decision in Zeiger v. United States, No. 389–60, decided November 1, 1961, Ct.Cl., 295 F.2d 915? (2) Was the defendant justified in deducting the premiums for Federal Employees' Group Life Insurance from the amount of back pay that was paid to plaintiff upon reinstatement?

The issues arise in this way. The plaintiff on all the pertinent dates was an employee of the Fish and Wildlife Service in the Department of the Interior. On October 12, 1953, plaintiff was suspended from his position on the ground that his employment was not clearly consistent with national security. The action was taken pursuant to the Act of August 26, 1950, 64 Stat. 476, 5 U.S.C. §§ 22–1, 22–2. He was restored to his former employment on July 1, 1958, as a result of the Supreme Court's decision in Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956), which held that the Act of August 26, 1950 did not apply to non-sensitive positions.

Plaintiff was paid the sum of $20,096.46 for the period of his suspension. The payment was made under the special provision of the Act of August 26, 1950, 5 U.S.C. § 22–1, which is as follows:

"* * * any person whose employment is so suspended or terminated * * * may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for *all or any part of the period of such suspension or termination in an amount not to exceed* the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person * * *." [Emphasis supplied.]

The amount awarded and paid to the plaintiff represented only the back pay. It did not include (1) any monetary allowance for annual leave which would have accrued during the period of suspension, and (2) there was deducted the amount of the premiums for Federal Employees' Group Life Insurance for the period of suspension. These are the items in issue here. The claims embodied in these two items were denied by the Comptroller General of the United States on July 29, 1959.

The amounts now in dispute represent 840 hours of annual leave which plaintiff would have been entitled to take during the period of his suspension. The dollar value of this item if plaintiff were to be paid in cash would amount of $3,246.92. The Comptroller General has specifically held that under the terms of the statute which is quoted above a suspended employee, when he is restored, is not entitled to annual leave which he might have taken had he remained at work during the period of suspension; that recovery cannot be had for leave during the time he was not at work at all.

There are other issues involved in this case and in the various cases that are cited, but we do not reach them here.

Before the petition was filed in this case on October 9, 1959, this court, in the case of Hynning v. United States, 141 Ct.Cl. 486 (1958), had decided that in cases of unlawful suspension back pay should normally include the monetary equivalent of annual leave that otherwise would have been taken had the suspended claimant remained on the payroll.

At the time of filing of the petition in the instant case there was pending in this court the case of Vitarelli v. United States, supra. The Vitarelli case included most of the issues that were to be decided in the case at bar. Both parties in the instant case agreed to await the decision in the Vitarelli case before proceeding further.

The Vitarelli case was decided June 8, 1960. That decision denied recovery of the claims for ingrade promotions, pay increases and legal expenses but held that the plaintiff in that case was entitled to the monetary equivalent of what would have been annual leave during the period of suspension.

The Comptroller General had continued to adhere to his position that annual leave was not compensable under the statute as an element of back pay and the Government was defending that position in this court in the case of Zeiger v. United States, supra. In its decision of November 1, 1961, the court in the Zeiger case overruled the phases of the Hynning and Vitarelli decisions that pertained to accrued annual leave and held that employees suspended but later restored were not entitled to recover the annual leave which would have accrued during the period of suspension.

The Zeiger case and others following it have adhered to this position.

Plaintiff in the instant case in a supplemental pleading seeks now to recover the monetary value of annual leave not as a statutory right as originally alleged, but on an asserted agreement which he claims the parties had made prior to the Vitarelli decision and in negotiations following the Vitarelli decision, but before the decision in Zeiger.

Plaintiff alleges that the parties entered into (1) an agreement that the Vitarelli case would determine the decision in this case (in which event he would be entitled to recover accrued annual leave), and (2) a further agreement during the post-Vitarelli period of negotiations that plaintiff was entitled to and would be paid the sum of $3,246.92 as the monetary equivalent of his accrued annual leave. Other than the question of whether it was proper for defendant to deduct the insurance premiums, the sole issue to be determined on this phase of the case is whether there is an enforceable agreement between the parties entitling plaintiff to compensation for leave which would have accrued during this period of suspension had he continued at work.

We are unable to agree with plaintiff that binding agreements were consummated during the considerable period that the negotiations covered.

We will first consider plaintiff's claim that the parties, prior to the Vitarelli decision, entered into an agreement having the effect of a stipulation to let the decision in Vitarelli determine the issues in their case.

The evidence upon which this contention is based consists of excerpts from two letters written to the commissioner of this court in response to a status inquiry directed to the parties. One of these is a letter dated February 9, 1960, in which counsel for defendant informed the commissioner that, since all of the issues save one were then before the court in the Vitarelli case, both parties had agreed, in the words of the letter, "to await the decision in that case before proceeding further with this case."

The other is a letter dated February 16, 1960, in which counsel for plaintiff informed the commissioner that the defendant's "conclusion that both parties are content to await the decision of the Vitarelli case is in accord with my thinking."

Because these letters were sent to the commissioner and thereby made a part of the record of the court, plaintiff contends that they "amounted to a stipulation that whatever decision the Court would make in the Vitarelli case would be binding on the parties and would dispose of the issues in this case."

We do not object to plaintiff's characterization of the agreement evidenced by the letters as a stipulation, for the important question is not what to call the agreement but how to construe it. We are unable to construe the letters as showing an intent to promise anything more than their express language indicates, that is, simply that the parties desired to await the decision in the Vitarelli case before proceeding with the case.

Plaintiff contends that an agreement "to await the decision in another case" should be construed liberally as an *agreement to abide by the decision* in the other case.

Unquestionably, the parties to a judicial proceeding may, for purposes of convenience and economy, enter into a valid agreement, which the court will usually enforce, that the judgment in their suit shall be the same as, or determined by, the judgment in another suit which involves the same issue as theirs. An agreement to do so, however, involves the surrender of substantive rights generally available to litigants, and the court should hesitate to imply such a promise where it has not been expressly made. Especially is this true where the only *expressed* evidence of the intent of the parties relates purely to procedural matters and not to substantive rights under the law as then interpreted or as it might be interpreted in the future. It would be neither fair nor just to construe, to defendant's detriment, the casual language of these letters as a binding commitment to relinquish substantive rights. We conclude that the only duty assumed by the parties under the agreement was to await the Vitarelli decision before taking further action in their own case. This was done and the duty was discharged. Plaintiff acquired thereby no implied right to a settlement consonant with the law of Vitarelli which can be enforced in this court.

As we have seen, plaintiff alleges an agreement entered into subsequent to Vitarelli and prior to Zeiger that the plaintiff was entitled to the sum of $3,-246.92 for the annual leave accruing during the period of his suspension and removal and that that sum was due to the plaintiff. In fact, plaintiff argues, whether or not there was an actual agreement, he *believed* there was one, that defendant was aware of this belief, and must therefore be held liable because he did not disabuse the plaintiff of his belief.

As to the post-Vitarelli period, it is not entirely clear from plaintiff's argument to what extent this second agreement depends upon his alleged "stipulation." Since we have held that there was no binding agreement to abide by Vitarelli, we will consider this aspect of plaintiff's theory of the case as an independent, separate contract providing for a specified item of plaintiff's claim—accrued annual leave.

A review of the various stipulations, offers, counteroffers, and final rejection in the period following the Vitarelli decision and up to the time of the Zeiger decision, when it became evident that defendant would go to trial to contest an award for accrued annual leave pursuant to the latter decision, convinces us that the parties were directing all their words and actions toward one goal well recognized in the law, i. e., to negotiate a compromise and settlement (referring any part of the claim to the court for determination if necessary) and to agree to a stipulation of facts either in settlement or, that failing, preparatory to going to trial.

There is clear evidence as to the nature and purpose of the negotiations involved here. There were, eventually, definite *offers* from both parties. For instance, plaintiff's attorney, after a long period of indecision about what position he should take in regard to the relatively insignificant question of insurance premiums, and after numerous questions addressed to the defendant on the same subject, offered, on behalf of his client, in a letter dated July 13, 1961, "to settle the above-entitled *cause* for the amount of $3,246.92 payable by the United States Government to my client." [Emphasis supplied.] This offer was conditioned on the requirement that the stipulation of settlement include a proposed statement concerning the coverage on an illegally separated employee under the Federal Employees' Group Life Insurance program.

Following this, by letter dated August 30, 1961, defendant made a counteroffer:

"This is to advise you that the offer in compromise submitted in your letter of July 13 has been rejected,

but that we have been authorized to make a counteroffer of $3,000 in *full settlement of this case.*" [Emphasis supplied.]

To constitute a binding agreement even on the parties, there must be a definite proposition and an acceptance. Evidence of mere negotiations is not sufficient to prove a compromise.

Here the only definite proposition which plaintiff made was rejected by defendant. Defendant's only definite proposition—its counteroffer—was withdrawn after being held open for 6 weeks.

■ The so-called second agreement, if we understand plaintiff's position correctly, is based on several letters which were exchanged during the first 6 months after Vitarelli. In an initial exchange after the decision was handed down, defendant had agreed that the Vitarelli decision *apparently* disposed of all the issues in the case at bar except those asserted in connection with the deduction of premiums of the Federal Employees' Group Life Insurance. Then, on January 19, 1961, defendant's attorney wrote plaintiff's attorney a letter informing him that the General Accounting Office had computed plaintiff's "lost" leave, finding that a total of 840 hours of annual leave not creditable to plaintiff's account accrued between the dates of his suspension and reinstatement, and, based on his rate of pay, that number of hours would be valued at $3,246.92. (Plaintiff had alleged in his petition that he was due approximately $4,027.50.) Plaintiff apparently implies an offer here to pay this amount and an acceptance by his subsequent conduct. This, however, was not the sole object of the negotiations. The objective here was the settlement of a cause of action involving a claim of which this was only one element. We decline to hold that by stating this figure in the manner it was done here bound defendant at this stage of the negotiations before he even knew plaintiff's position in regard to other claims. Were parties to be irrevocably committed by such ill-defined acts, they would embark on a compromise and settlement at their peril, if at all.

And certainly the letter of January 19, 1961, was not the definite kind of proposition that might be accepted as a compromise agreement, even assuming the settlement contemplated a series of "settlements" of each element independent of the other, which, of course, was not indicated by the offer and counteroffer.

When definite offers were in fact made, some 6 months later, the parties were only $246.92 apart, and, with the clearer vision of hindsight, we can see that plaintiff would have been well advised to accept defendant's counteroffer. Perhaps it seems harsh that plaintiff, so close to recovering all to which he would have been entitled under the decision of the case they had waited for, should not be granted recovery on the grounds set forth in his brief. We think, however, that the record shows negotiations were made in good faith, an implied duty from having agreed to await Vitarelli, that reasonable offers were made, and made available for acceptance for an adequate period of time. With such a clear record of offer, rejection, and counteroffer and, finally, express withdrawal after more than a reasonable time, we are unable to find that, prior to these well defined acts, defendant agreed to settle the accrued leave claim on the basis of its preliminary figures as prepared by the General Accounting Office.

■■ The court will usually approve stipulations made by the representatives of the litigants, yet it does not necessarily do so. While in view of the court's position stated above, it is not necessary to a decision in this case, yet in order to have all possible issues finally settled, we think it is proper to add that whether or not the parties agreed to be bound by the Vitarelli decision, the court is not bound to enter a judgment against the Government for a sum which the court determines, in the light of all the circumstances and facts presented, the defendant should not be held legally liable to pay. The parties have a right to settle

a case on any terms they agree upon before they invoke the aid of the court; but, after the parties have invoked its aid, the court is not legally bound to approve a settlement which it finds obligates the Government to pay a sum which the court determines is not properly due. In view of our decision in the Zeiger case, we could not approve a judgment that runs counter to it. The courts have final responsibility for interpreting the applicable statutes and regulations. Cowles v. United States, 99 Ct.Cl. 731, 50 F.Supp. 242 (1943). See also Davidson v. United States, Ct.Cl., 1962, decided December 5, 1962, 310 F.2d 937.

■ We turn now to the question whether it was proper for defendant to deduct $225.61 for insurance premiums for Federal Employees' Group Life Insurance from back salary paid to plaintiff upon reinstatement.

The Act of August 17, 1954, Public Law 598, 68 Stat. 736, 5 U.S.C. §§ 2091–2103 (1958), authorizes the Civil Service Commission to purchase from one or more life insurance companies a policy or policies of group life, accidental death, and dismemberment insurance and to provide other benefits specified in the Act. The Act provides that each employee (with certain exceptions) of the different departments of Government shall be eligible to be insured. The Act further provides that any policy purchased by the Commission shall provide that all employees eligible under the terms of the Act shall be automatically insured effective when the employee becomes eligible, but subject to the condition that any employee desiring not to be so covered by insurance should have a right, upon a form to be furnished by the Civil Service Commission, to give written notice to his employing office that he desired not to be so insured. In the latter case the Act provided that the employee would not be covered by the group insurance policy. There is further provision for withholding from the salary payment of an employee who is covered by the insurance his share of the cost of such insurance, but that if the em-

ployee chooses not to be covered "the deduction shall not be made from his salary payment."

Plaintiff's employment was terminated prior to the effective date of the Group Life Insurance Act and therefore he did not have an opportunity to exercise his statutory right to reject the coverage. When he was reinstated in 1958 he was offered the opportunity to reject coverage from that date on and did not do so.

Upon plaintiff's restoration to duty on July 1, 1958, on the ground that he had been erroneously suspended or removed, the plaintiff was given his back salary at the rate he was being paid at the time of his suspension on October 12, 1953. But there was deducted from such payment the amount of premiums for group life insurance that would have been deducted for the intervening period had he remained on the payroll and had not chosen to reject insurance coverage.

Plaintiff says that since he was not on the payroll during that period and since the Government did not pay the insurance company for his insurance and none of the Government records showed plaintiff to be insured during the period of suspension, the amount of insurance premiums should not have been deducted from his back pay. The defendant contends that since the Act provided for automatic insurance and since plaintiff did not reject coverage for the period of suspension and since he was restored retroactively, which had the effect of putting him back on the payroll as if he had never been removed, it was proper to deduct insurance premiums.

In the unusual circumstances of this case, we agree that the insurance premiums should not have been deducted from the amount paid to plaintiff. Section 22–1 of the Act of August 26, 1950, above quoted, provided that any person whose employment is suspended or terminated and is restored to duty shall be allowed compensation for all or any part of the period not to exceed the difference between the amount such person would normally have earned during the period of suspension, at the rate he was re-

ceiving on the date of suspension, less the interim net earnings of such person during that period.

The defendant's argument is that plaintiff's restoration operated retroactively and had the effect of putting him back on the payroll as though he had never been removed. The short answer to this is that the Act does not so provide. This court and other courts have several times held that the Act does not provide for payment of ingrade promotions nor the money equivalent of annual leave that would have been taken had the employee remained on the payroll. This was the position taken by defendant in those cases. This position of the defendant is correct since the Act clearly sets forth that the reinstated employee shall be paid at the rate he was receiving on the date of suspension.

Thus, clearly, the plaintiff does not receive all that he would have received had he remained on the payroll. In the light of this invoking of the literal wording of the statute for which defendant has long contended, it is difficult to understand how the defendant is justified in reading into the statute the right to deduct premiums for insurance. If during the period of suspension, while plaintiff was engaged in outside work, he had been killed and his beneficiary, or had been maimed and he, had sought to hold the Government liable for insurance which the Government had not taken out, it is doubtful that the Government would have admitted liability. It might have required a lawsuit to hold the Government liable. The regulations provide that in the event of retroactive restoration to duty after an erroneous suspension, payroll deductions shall be made from the date of removal from the retroactive pay adjustments. But they do not provide that the insurance will be treated as having been in full force during the period of suspension. It is not clear that the statute authorizes such retroactive collection of insurance pre-

miums. However, if it is undertaken to be done by regulations it seems that the regulations should make clear either that an employee who is later restored is covered by insurance during the intervening period or the premiums should not be deducted from any sum that he would otherwise be entitled to receive.

In any event, the plaintiff was not extended the privilege of declining insurance during the period of suspension for he was suspended before the Federal Employees' Group Insurance Act was passed. Certainly retroactive collection should not be made where one of plaintiff's statutory rights could not be exercised by plaintiff. That is as far as we go in this decision.[1]

The defendant here is placed in the awkward position of insisting on the literal wording of the statute for the purpose of excluding the increased pay of normal automatic and regular ingrade promotions and the equivalent of annual leave because not included in the wording of the statute, and at the same time insisting upon insurance deductions which likewise are not named in the statute. It is too much like blowing both hot and cold. There are other details and circumstances in this case which would make the deduction especially unfair.

Plaintiff is entitled to recover the sum of $225.61, and judgment for plaintiff is entered in this amount.

LARAMORE, Judge (concurring).

I concur with the majority on the question of whether it was proper for defendant to deduct insurance premiums for Federal Employees' Group Life Insurance from back salary paid to plaintiff upon reinstatement.

The Government did not pay the insurance company for plaintiff's insurance, and no record of the Government showed plaintiff to be insured during the period of his suspension. Since no money was paid out by the Government, recoupment of this sum would constitute an

---

[1]. The ruling of the Comptroller General in 36 Comp.Gen. 225 (1956) construes a different act and does not apply to the question involved here.

unjust enrichment on the part of the Government. In these circumstances, it is not necessary for the court to speculate on whether or not the Government would have admitted liability in the event plaintiff had died during the period of his suspension. It is further unnecessary to speculate as to whether or not plaintiff was covered by insurance during this period.

In all other respects I agree with the majority.

DAVIS, Judge (dissenting in part).

I dissent from the holding that the parties had not agreed to be bound by the Vitarelli decision on so-called "lost leave."[2] To me it is clear from the correspondence set forth in the findings (i) that, no later than the early months of 1961, plaintiff and defendant had informally joined in an agreement that Vitarelli—decided on June 8, 1960— would govern all aspects of the present case except for the deduction of the life insurance premiums, and (ii) that a stipulated judgment would be entered on that basis. In September 1960, over three months after Vitarelli was handed down, defendant's counsel wrote plaintiff's attorney that "we agree with you that the Vitarelli decision apparently disposes of all of the issues in this case other than the claim which you have asserted in connection with the deduction of premiums of the Federal Employees Group Life Insurance." In January 1961, defendant supplied plaintiff's counsel with a computation under the Vitarelli rule of the amount due for

the "lost leave." Thereafter the only subject left open was the matter of the insurance premiums; the communications between the parties revolved around that still unsettled issue and assumed that agreement had already been reached on the other aspects of the case. Although defendant ultimately rejected an offer in compromise, its letters did not suggest that there was no such agreement on the leave question or seek to withdraw from it. The plaintiff's attorney obviously thought all the while that he had an existing agreement. He had good reason to think so and the defendant did nothing to disabuse him. Its letters, throughout its course of dealings with plaintiff's attorney after the Vitarelli decision, are quite consistent with an understanding between counsel that the Vitarelli rule would be the basis for judgment in this case on the issues which that decision covered. There was never any indication to the contrary. In these circumstances, I would apply the normal rule that the external conduct of the parties, not the undisclosed intention of one of them, determines whether an agreement has been made (see, e. g., The Padbloc Company, Inc. v. United States, Ct.Cl., No. 523–57, decided April 5, 1963; Mansfield v. Hodgdon, 147 Mass. 304, 306, 17 N.E. 544, 547 (1888)), and therefore hold that the plaintiff and defendant did reach a definite settlement agreement on the major issue in the case.[3]

The court is not bound-and-tied by that agreement,[4] but I see no sufficient reason for refusing to enforce it. The absence

2. I concur in the judgment on the other issue, involving the deduction of the life insurance premiums, on the ground that this plaintiff was not and could not be accorded the option of taking or declining the insurance during the period of his suspension (since he was suspended before the Federal Employees' Group Insurance Act took effect).

3. A partial settlement is as binding as a total one if the parties have not agreed to keep all questions open until a full accord on all matters under discussion. Here, the exchange of correspondence

shows that the question of "lost leave" was never considered to be open after the parties had once agreed upon it.

4. Putting to one side the possible exception of tax agreements entered into by the Commissioner of Internal Revenue under his special authority (see Lang-Kidde Co. v. United States, 77 Ct.Cl. 280, 2 F.Supp. 768 (1933); Brown v. United States, 83 Ct.Cl. 360, 14 F.Supp. 520 (1936)), it is clear that this court has power to reject a compromise agreement if there is good reason, just as it has power to reject a stipulation on a particular issue. See

of a formal stipulation of settlement is not enough. Campbell v. United States, 19 Ct.Cl. 426 (1884). Nor is it enough that Zeiger v. United States, Ct.Cl., No. 389–60, decided Nov. 1, 1961, 295 F.2d 915, now shows Vitarelli to have been wrong as to compensation for "lost leave." "The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims" (Backus v. United States, 75 Ct.Cl. 69, 104, 59 F.2d 242, 259 (1932), cert. denied, 288 U.S. 610, 53 S.Ct. 402, 77 L.Ed. 984), and a settlement often rests on the acceptance by one party or the other of a doubtful point of law or fact. As Chief Judge Bazelon recently said for the District of Columbia Circuit, "* * * a settlement payment made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty. Otherwise the public policy of encouraging settlements would be seriously undermined." Moses-Ecco Company, Inc v. Roscoe-Ajax Corp., C.A.D.C., 320 F.2d 685, 690 (footnote omitted). This court has gone so far as to say that "[i]t is not essential that the question be in fact doubtful in legal contemplation" (Trumbull Steel Co. v. United States, 76 Ct.Cl. 391, 400–401, 1 F. Supp. 762, 766 (1932)), and it quoted (76 Ct.Cl. at 402, 1 F.Supp. at 767) from

Federal Export Corp. v. United States, 88 Ct.Cl. 60, 83–84, 25 F.Supp. 109, 121 (1938) cert. denied, 308 U.S. 590, 60 S. Ct. 120, 84 L.Ed. 494 (1939); Cowles v. United States, 99 Ct.Cl. 731, 742, 50 F. Supp. 242, 247 (1943); Davidson Corp. v. United States, Ct.Cl., 310 F.2d 937, 939.

Hennesey v. Bacon, 137 U.S. 78, 85, 11 S.Ct. 17, 34 L.Ed. 605 (1890): "Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of its surrendered rights that the law, if appealed to, would have sustained." Because it is not normally concerned with the soundness of a compromise, the court customarily accepts stipulated settlements calling for judgments against the United States, without any inquiry into the correctness of the legal principles or factual assumptions on which the compromise may be founded. As this practice shows, it does not make any difference that the settlement agreement was consummated after the litigation was begun.

In addition, there is, in my view, a reason special to this case why the settlement agreement on "lost leave" should be accepted and enforced. If it were not for the second issue (relating to premium deductions) on which the parties continued to disagree, it is very probable that a consent judgment would have been filed in plaintiff's favor, on the basis of the Vitarelli decision, well before the Zeiger ruling. The delay in entering judgment due to this extraneous factor should not be allowed to prejudice plaintiff.[5]

5. This special reason for accepting the settlement did not exist in Albin v. United States, 136 Ct.Cl. 801 (1956), and similar cases.