**MORRIS WHITE FASHIONS, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.
Sept. 17, 1959.

Baar, Bennett & Fullen, New York City, for plaintiff; Milton I. Newman, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty. for the Southern Dist. of New York, for defendant; John W. Hasson, Asst. U. S. Atty., Woodside, N. Y., of counsel.

DAWSON, District Judge.

This is a motion by defendant seeking an order under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. granting summary judgment on the ground that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment dismissing the complaint as a matter of law.

The following facts appear to exist without substantial controversy:

Morris White Fashions, Inc. (hereinafter referred to as plaintiff) is a corporation formed in 1939 by Morris and Abe White, brothers, who have for many years been active in the handbag manufacturing business, and who have organized various corporations to conduct their business since 1926. On December 15, 1944 plaintiff filed a completed Income and Declared Value Excess Profits Tax Return and a completed Excess Profits Tax Return for the fiscal years ended June 30, 1943 and June 30, 1944, and on January 15, 1946 plaintiff filed identical returns for the fiscal year ended June 30, 1945. Based upon an audit of plaintiff's returns for the above-stated fiscal periods, the Internal Revenue Service recommended a deficiency assessment of $96,343.05, partially resulting from a disallowance of certain unsubstantiated cash purchases of leather raw materials made by plaintiff in the amount of $45,549.58 for the fiscal year ended June 30, 1944, and in the amount of $16,167.97 for the fiscal year ended June 30, 1945.

After discussion of the proposed deficiency with plaintiff and his representative, on or about January 2, 1947, plaintiff executed a "Waiver of Restrictions on Assessment and Acceptance of Overassessment" (Treasury Form 874) consenting to the assessment of the deficiency and an overassessment for the fiscal year ended June 30, 1944 in the amount of $3,897.25.

Subsequently, on June 21, 1948, plaintiff was notified by the Internal Revenue Service of a proposed additional deficiency assessment in the amount to $209,242.-78, based on a supplemental audit of the plaintiff's tax returns for the same fiscal periods upon which the original assessment was based. On October 7, 1948, plaintiff filed a Notice of Protest disputing the basis for the proposed additional

deficiency assessment. Simultaneously, deficiencies and overassessments were also proposed in the cases of the following related individual taxpayers for the years 1942–1945, inclusive: (a) Morris White and his wife Lillie White, (b) Abe White and Elsie White and (c) Bernard White, son of Morris White.

In 1951 all the tax cases were referred to the New York District Appellate Staff of the Internal Revenue Service where the taxpayers were represented by counsel, and the following issues were presented:

(1) Whether Morris White and Abe White sustained long-term capital losses in the year 1942 by reason of purported sales of stock they owned in Morris White, Inc., a predecessor corporation to plaintiff formed in 1926. The authorized capital stock of this corporation was $2,000,000, representing 20,000 shares with a par value of $100, of which Morris White invested $1,500,000 for 15,000 shares and Abe White invested $500,000 for the remaining 5,000 shares. On December 15, 1937 Morris White, Inc. was involuntarily dissolved by the State of New York for non-payment of franchise taxes. In August 1942 a business competitor purchased the entire capital stock of the corporation for $16,000, $12,450 being paid to Morris White for his 15,000 shares and $4,150 being paid to Abe White for his 5,000 shares. In their joint return for the year 1942, Morris White and his wife Lillie reported a long-term capital loss of $743,775 for the sale in that year of the 15,000 shares of Morris White, Inc. for $12,450, and in his individual return filed for the same year, Abe White reported a long-term capital loss of $247,925 with respect to the sale in that year of his 5,000 shares of Morris White, Inc. for $4,150. The Internal Revenue Service took the position that the claimed losses should be disallowed on the ground that the capital stock of Morris White, Inc. became worthless in 1937 when the corporation was dissolved after distribution of all of its tangible assets to its creditors. Accordingly the net income of Morris and Abe White for the

year 1942 was increased by $6,225 and $2,075 respectively, representing long-term capital gain on the sale of the capital stock of Morris White, Inc., which was deemed to have a zero basis.

(2) Whether the Internal Revenue Agent in Charge properly increased the net income of Morris White Fashions, Inc. for the years ended June 30, 1944 and June 30, 1945 by disallowance of cash purchases of raw materials in the respective amounts of $45,549.58 and $16,167.97 for lack of substantiating evidence. (In spite of the fact that plaintiff had executed Form 874 consenting to a deficiency assessment on this particular issue in 1947, this matter was treated as a new issue by the Appellate Staff).

(3) Whether Morris White Sales Co., a partnership consisting of Morris White, his son Bernard B. White, his wife Lillie White, and Abe White, organized in 1934 for the purpose of engaging in business as sales agents, and which by contract with plaintiff became sole selling agent for Morris White Fashions, Inc., should be recognized as a valid partnership for federal income tax purposes, or whether, as determined by the Internal Revenue Agent in Charge, its net income for the fiscal years 1944 and 1945 should be considered as integral parts of the net income of plaintiff for the aforementioned periods.

The following proposals were submitted on behalf of plaintiff and the individual taxpayers in settlement of these issues:

(1) That the taxpayers, Morris and Abe White, concede that they did not sustain long-term capital losses in the year 1942 by reason of the sale of stock of Morris White, Inc.

(2) That it be conceded that the net income of plaintiff for the years 1944 and 1945 should be increased by $45,549.58 and $16,167.97, respectively, representing unsubstantiated cash purchases.

(3) That the Government concede that Morris White Sales Company is to be

recognized as a valid partnership for federal income tax purposes.

These proposals for settlement were accepted by the Appellate Staff as being in the best interests of the Government, and accordingly, on April 4, 1952, the plaintiff executed a modified Form 874 and the related taxpayers executed Form 870–AS. In plaintiff's modified Form 874 the usual statement to the effect that the assertion of further deficiencies by the Commissioner of Internal Revenue was not precluded was crossed out. Also, the plaintiff expressly agreed not to file or prosecute claims for refund, except as to an issue not now raised by the plaintiff. The modified Form 874 was accepted by the Commissioner's delegate on May 28, 1952, and the plaintiff agreed to an assessment and collection of a deficiency in the amount of $95,678.68 and an overassessment in the amount of $3,897.25. The amounts of the deficiencies in tax and interest were paid in full by the plaintiff together with the amounts of delinquency interest.

On December 12, 1957 a claim for refund was filed for both years in issue within the plaintiff's period of limitations but after the three year statute of limitations for the making of additional assessments had run against the Government. The claim was formally rejected on October 24, 1958 based upon the aforementioned execution of the modified Form 874, wherein plaintiff consented to the assessment of the taxes and agreed not to file or prosecute claims for refund for the years in question.

Thereupon plaintiff commenced this action to recover a refund of $45,695.26 as an alleged overpayment of excess profits taxes, declared value excess profits taxes and interest for the fiscal years 1944 and 1945 by filing its complaint in the United States Court for the Southern District of New York on October 6, 1958. The instant motion by the defendant, if granted, will result in a dismissal of the complaint.

The basic issue which this Court must decide is whether or not the circumstances surrounding the execution of the compromise agreement entered into between plaintiff and the Government in 1952 are such as to estop the plaintiff from prosecuting the instant claim for refund.

■ At the outset, there no longer exists any controversy over the question whether the execution by both parties of a modified Form 874 or similar document standing alone constitutes a bar to taxpayer's claim for refund. The Supreme Court of the United States in the landmark decision of Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, is unequivocal in laying down the exclusive method by which such compromise agreements are to be made binding, and the Government itself concedes in its brief at page 11 that the agreement in question was not formalized in accordance with § 3760 of the Code, 26 U.S.C.A. § 3760. The question whether taxpayer is estopped to assert his claim is thus left open to be decided on an individual basis in the sound discretion of the district court. Moreover, subsequent decisions are fully in accord with the Botany Worsted Mills rationale. See Cuba Railroad Company v. United States, D.C., 124 F.Supp. 182; D.C., 135 F.Supp. 847; 2 Cir., 1958, 254 F.2d 280; Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891; Bennett v. United States, 7 Cir., 1956, 231 F.2d 465; Cain v. United States, 8 Cir., 1958, 255 F.2d 193; Daugette v. Patterson, 5 Cir., 1957, 250 F.2d 753. See also Gutkin, "Informal Federal Tax Settlements and Their Binding Effect," 4 Tax Law Review 477 (1948) at pp. 484–489; Griswold, "Finality of Administrative Settlements in Tax Cases." Note, 57 Harvard Law Review 912 (1944) at pp. 912–913.

■ The remaining question, namely, under what circumstances will the doctrine of equitable estoppel be applied to defeat a taxpayer's claim for refund, has proved extremely difficult, and the decisions of the various circuits are far from being in harmony in dealing with the problem. Each case must be decided on its individual merits, and the decision will very often hang on the particular facts and circumstances surrounding

the compromise agreement. Before examining the facts of the instant case, it is appropriate at this point to summarize the basic principles underlying the doctrine of equitable estoppel as applied in tax compromise cases. These have been lucidly set forth in Van Antwerp v. United States, 9 Cir., 1937, 92 F.2d 871, 875, cited with favor by Judge Van Oosterhout in his dissenting opinion in Cain v. United States, supra, 255 F.2d at page 201:

"To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed."

The Government rests its case in support of its motion for summary judgment on three grounds: (1) that plaintiff had expressly consented to the assessment of the taxes made the basis of his claim for refund by executing the Form 874 and had agreed not to file or prosecute claims for refund for the years in question; (2) that in reliance on the aforementioned document the statute of limitations for the assessment of additional deficiencies has tolled against the Government and therefore the Government will suffer unavoidable loss and thus be adversely affected by plaintiff's claim for refund; (3) that the Government made concessions in the agreement to the plaintiff and other taxpayers far in excess of the claimed refund which it cannot fully recoup by set-off and consequently the doctrine of recoupment relied upon by plaintiff should not bar the Government's defense of equitable estoppel.

Taking up each of the Government's contentions in turn, an examination of the record fails to reveal any allegation of false representation or misleading silence upon which the Government could plausibly rely. By its own concession the Government negatived any reliance upon the execution of the Form 874, as modified as constituting a binding closing agreement, and thus the fact that plaintiff agreed not to prosecute any claim for refund for the years in question is of no significance. In this respect the Form 874, as modified, is a nullity. Cuba Railroad Company v. United States, D.C.S.D.N.Y.1954, 124 F.Supp. 182, at page 184. See also Bank of New York v. United States, D.C.S.D.N.Y.1956, 141 F Supp. 364; Cuba Railroad Company v. United States, D.C.S.D.N.Y.1955, 135 F.Supp. 847. These decisions of the Southern District are given tacit approval by the Second Circuit, which has indicated as recently as 1958 that it would assume, without deciding, that the form in question left it open to the plaintiff to recover the claimed refund. Cuba Railroad Company v. United States, 2 Cir., 254 F.2d 280. The earlier cases of Baldwin v. Higgins, 19 AFTG 1341, affirmed 2 Cir., 100 F.2d 405, and Rubel Corp. v. Rasquin, D.C., 43 F.Supp. 111, affirmed 2 Cir., 132 F.2d 640, relied on by the Government are not cited in any of the more recent opinions and it may be safely assumed that they are no longer controlling in this Circuit. Baldwin v. Higgins was decided on strict contract grounds clearly at variance with the Botany Worsted Mills decision, and Rubel Corp. v. Rasquin was decided on the ground that § 284(d) of the Internal Revenue Act of 1926 and § 322(c) of the Internal Revenue Code, 26 U.S.C.A. § 322(c) prevented the court from taking jurisdiction over plaintiff's claim.

It is the Government's second ground in support of its motion for summary judgment that comes to grips with the heart of the conflict within the various jurisdictions as to the applicability of the doctrine of estoppel. The Eighth Circuit has consistently maintained that the running of the statute of limitations against the Government itself constitutes a sufficient detriment to bar the assertion of any subsequent claim for refund based on a prior informal settlement

agreement. "As we have indicated, we think it is sufficient to preclude a taxpayer from claiming refund, in relation to an executed settlement agreement, that the statute of limitations has run against the right of the Commissioner to deal with the situation further." Cain v. United States, 8 Cir., 255 F.2d 193, at page 199. See also Schneider v. Kelm, D.C., 137 F.Supp. 871, at pages 875–876. The same view has been taken by the Court of Claims in Guggenheim v. United States, 77 F.Supp. 186, 111 Ct.Cl. 165, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, and by the Fifth Circuit in Daugette v. Patterson, 250 F.2d 753.

Decisions squarely in opposition to these holdings are found in the opinions of the Sixth Circuit, Joyce v. Gentsch, 141 F.2d 891, the Seventh Circuit, Bennett v. United States, 231 F.2d 465, and the Third Circuit, Bank of New York v. United States, 170 F.2d 20. The position in the Second Circuit, although not so clearly defined, is nonetheless in favor of permitting the prosecution of such refund claims. The Cuba Railroad Company decisions and the Bank of New York case already referred to clearly indicate this trend. Language found in the most recent decision of the United States Tax Court is apposite:

"* * * It is not enough to show that in reliance on petitioner's statement of his unenforceable undertaking that he would not file or prosecute any claim for refund respondent permitted the period of limitations to run on possible hypothetical deficiencies characterized only in general language. He must show that as a result of his reliance upon petitioner's 'statement' the period of limitations was permitted to run on specific items of additional tax which he in good faith considers to have been possible to collect as of the time of the execution of Form 870–TS, the barring of which by the statute of limitations will result in a real loss to the Treasury. Furthermore, it must be demonstrated that the claims for additional taxes (with regard to which he is barred from determining deficiencies) are either not available as recoupments or set-offs to petitioner's claims for overpayment or are in amounts larger than petitioner's claims. See Joyce v. Gentsch, supra; Cuba Railroad Company v. United States, supra." Arthur V. Davis v. Commissioner, 1958, 29 T.C. 878.

The key factor ignored in the Guggenheim and Cain v. United States decisions, supra, is that the defense of equitable recoupment may be pleaded by the Government as a set-off to plaintiff's claim for refund, even though the statute of limitations has run against the Government. Such a defense is never barred by the statute of limitations, so long as the main action is timely. Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. To allow the prosecution of the refund to stand while simultaneously permitting the Government to plead a set-off against such a claim appears to be the more reasonable approach to the problem of adjusting tax controversies, and has in fact been adopted by the Second Circuit and other jurisdictions. See Cuba Railroad Company cases, supra, Joyce v. Gentsch, supra, Davis v. Commissioner, supra. Clearly equitable estoppel would not be appropriate where the Government could set off against taxpayer's claim an amount sufficient to compensate for its inability to assess additional deficiencies because of the tolling of the statute of limitations.

Therefore the remaining question is whether the Government may in fact set up as a defense to taxpayer's claim an amount by way of set-off sufficient to defeat the instant action. For the Second Circuit has made it unequivocally clear that where the set-off asserted by the Treasury is a valid answer to the claim and is larger, it constitutes a bar to the action and is sufficient grounds for upholding the dismissal of plaintiff's complaint by the granting of summary judgment. Cuba Railroad Company v. United States, 2 Cir., 1958, 254 F.2d 280.

In order to decide this question it is incumbent upon the Government to plead a set-off and to establish to the satisfaction of the Court that the set-off is a valid answer to the claim. The record is devoid of any attempt on the Government's part to plead or establish this defense, other than by extremely vague and unsupported statements contained in the brief submitted on behalf of the Government. See in accord John v. United States, D.C., 138 F.Supp. 89. Clearly counsel for the Government may amend its pleading at this stage in order to assert this defense and may submit affidavits in support of a motion for summary judgment on the ground that the claimed set-off is in excess of plaintiff's claim without undue hardship. In this manner prompt and equitable disposition of the case could be accomplished. The "helpless position" in which the Government alleges to find itself simply does not exist.

One other matter deserves comment. The Government attempts to bring the case at bar within the "package" settlement doctrine first enunciated by the Fourth Circuit in Girard v. Gill, D.C.M.D.N.C.1956, 142 F.Supp. 770, affirmed per curiam, 4 Cir., 1957, 243 F.2d 166* and referred to in Cain v. United States, supra, on the ground that the settlement as executed involved individual taxpayers as well as the plaintiff, and that therefore the plaintiff should be barred from asserting its claim for refund because the Government is precluded from asserting by way of set-off claims against taxpayers other than the plaintiff. The short answer to this contention is that the only concession made by the Government in the "settlement" was that the individuals constituting Morris

White Sales Company "is to be recognized as a valid partnership for federal income tax purposes," and this concession may be revived by way of set-off against the plaintiff.

For the above reasons, defendant's motion for summary judgment is denied with leave to amend in order to plead the defense of equitable set-off. So ordered.

---

* It is worthy of note that the latest decision in the Fourth Circuit bearing directly on the question whether summary judgment would lie to bar a taxpayer's claim for refund on the ground of estoppel because of the running of the statute of limitations now follows the trend established by the decisions in the Second, Third and Sixth Circuits. A lower court decision granting summary judgment was reversed on the ground that the pleadings and affidavits presented genuine issues of material fact as to whether the execution by taxpayer of a Form 870–TS estopped him from maintaining his action, thus precluding summary judgment. Girard v. Gill, 4 Cir., 1958, 261 F.2d 695, at pages 698–700.