COOPER AGENCY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 68–533.

United States District Court D. South Carolina, Columbia Division.

July 16, 1969.

Charles F. Cooper, Columbia, S. C., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Myron C. Baum, Sidney B. Williams, Attys., Dept. of Justice, Washington, D. C., Klyde Robinson, U. S. Atty., Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## OPINION and ORDER

DONALD RUSSELL, District Judge.

This suit seeks recovery of that portion of a payment (i. e., $1,192,405.43) made in compromise settlement of certain income tax assessments against the plaintiff and some fourteen other parties which was assigned to the extinguishment or abatement of various tax assessments against the plaintiff as transferee.

It is the contention of the plaintiff that its liability on the assessments, refund of which is sought herein, was as transferee and that such derivative liability was imperfect both because the transfers to it were for full value and because the notices of deficiency on which the assessments were based were defective. While admitting the execution of a compromise settlement by the terms of which it bound itself not to seek a refund, it urges that such compromise agreement is not a bar, since, as to it, the agreement did not represent a compromise and, even if it did, the agreement is voidable for duress and coercion.

The defendant, on the other hand, rests its defense on (1) the compromise agreement and, particularly, the express provision thereof under which the plaintiff bound itself not to seek or sue for a refund and (2) on an estoppel against the plaintiff to repudiate such settlement. It, also asserts that a small part of plaintiff's claim was not filed within time and is accordingly barred in any event.

Certain interrogatories have been exchanged between the parties. In addition, both parties have filed certain affidavits. They have both cited and rely, though for different reasons, on the compromise agreement between the parties. On the basis of the record so made, both parties have moved for summary judgment.

It is obvious that, if the provision in the undisputed compromise settlement agreement proscribing any suit by the plaintiff for a refund is valid and enforceable, the motion of the defendant for summary judgment must be granted and the motion of the plaintiff denied. It is necessary, therefore, to review at the outset the undisputed facts, about which there is no genuine issue, leading up to and involved in the compromise settlement.

From the undisputed facts in the record before me, it appears that on September 16, 1963, there were tax assessments "in a total amount of approxi-

mately $9,000,000" outstanding against the plaintiff and "certain members of the Cooper family" and their "corporations and associations", as well as "proposed additional deficiencies * * * in substantial amounts." [1] None of the taxpayers involved either in such outstanding or proposed assessments, within the allowable period for that action, petitioned the Tax Court for a redetermination of their respective tax liabilities. To the contrary, the plaintiff and its associated interests hastened to file "ten actions", seeking of this Court injunctive relief against the outstanding or proposed assessments, contending, among other things, that the notices of deficiencies upon which the assessments were based were defective, thereby rendering "null and void" the assessments. Relief in those proceedings was denied the plaintiff and its associated interests. In the course of denying relief, the Court explicitly sustained the sufficiency of the notices of deficiency.[2]

Following the dismissal of this initial injunctive action, the plaintiff and associated parties began compromise negotiations. The plaintiff contended that, during such negotiations, an agent of the Commissioner "conceded" that the plaintiff's liability was "at most, only $198,000", even though, as plaintiff's complaint thereafter alleged, the actual assessments made against the plaintiff itself at the time aggregated $1,508,033.-10. The extent of liability of the other transferees, as discussed during these negotiations, was not indicated in the record. Arguing that any assessments against it in excess of $198,000 were void as a result of such alleged "concession" and renewing its objections to the assessments made in its earlier action for defect in the notices of deficiency, the plaintiff filed a second injunctive suit against the District Director on September 27, 1965. Relief was denied

plaintiff in this second action on October 28, 1965.[3]

Settlement negotiations on behalf of both the plaintiff and all associated parties were thereupon renewed. In the meantime, the District Director had levied upon certain property of the plaintiff and its associated interests and was in the process of advertising same for sale under levy. On November 24, 1965, the plaintiff, acting *"on behalf of all taxpayers involved"*, and represented by four able and experienced counsel, submitted in writing an offer of $1,250,000 in compromise settlement of "all assessments made or proposed * * * including any issues now pending before the Appellate Division, Internal Revenue Service, whether assessed or not" "for all years up to and including taxable years ending in 1961" against the plaintiff and related interests or family connections. The taxpayers to be granted relief under the proposed settlement included 10 corporate parties and 5 named individuals along with "their children, wives, and grandchildren." The offer included these two specific conditions:

"1. No claims or suits for refund will be made for the years involved in the settlement.

\* \* \* \* \* \*

"4. The parties shall agree upon the allocation of the payment made hereunder, upon any effect that the payment hereunder may have on basis of property and otherwise upon the basis of property which may be involved, but it is expressly stipulated and agreed that no controversy or issue of any kind or character whether as to basis or allocation or any other dispute as to mechanics or details of carrying out the agreement

1. Cooper Agency, Inc. v. McLeod, 235 F.Supp. 276, 278 (D.C.S.C.1964).

2. Cooper Agency, Inc. v. McLeod (D.C. S.C.1964), 235 F.Supp. 276, 283, affirmed, 348 F.2d 919.

3. Cooper Agency v. McLeod (D.C.S.C. 1965) 247 F.Supp. 57.

shall prevent or delay payment of the $1,250,000.00 beyond sixty (60) days from the date hereof."

After submission to and approval by the Commissioner of Internal Revenue and the Attorney General of the United States,[4] the offer of the plaintiff, as incorporated in its letter, was accepted and the District Director, Internal Revenue Service, duly evidenced such acceptance on their behalf by affixing his signature to a form of acceptance included in the letter of the plaintiff, copy of which was furnished the plaintiff.

After acceptance of the offer, the plaintiff paid, within the sixty days provided, the sum agreed upon and the District Director proceeded to release the federal tax liens and property seizures, to abandon any sales under advertisement and to cancel all collection activities arising out of the assessments described in plaintiff's letter of November 24, 1965. In addition, the Internal Revenue Service abandoned its claims of liability pending in the Appellate Division and agreed to Orders in the Tax Court to the same effect, thereby fulfilling that part of its agreement.

After payment was made by the taxpayers, the District Director requested the plaintiff and its associated taxpayers to submit their proposed allocation of the compromise settlement payment among the various assessments as contemplated in condition 4, quoted *supra*, of the settlement offer. The plaintiff, acting apparently again for all the taxpayers, proposed that $1,192,405.43 be "allocated to cover full payment of any transferee liability claims against Cooper Agency" and that the remaining $57,594.57 "be allocated to the complete settlement of all tax deficiencies through the year 1961 and all transferee liabilities of all those named in the agreement except any amounts owed by Cooper Agency as transferee." As of November 24, 1965, the net outstanding assessments against the plaintiff totaled, with interest and penalties, $1,795,466.63, and the outstanding assessments against the other parties involved in the settlement were in excess of $15,000,000. An employee of the District Director thereafter advised the plaintiff that the District Director accepted the proposal for allocation of the payment as submitted by the plaintiff.

Exactly two years to the day after the settlement agreement (but within two years of payment of all the settlement save $70,000 thereof), the plaintiff filed a claim for refund in the amount of $1,192,405.43, being the amount of the settlement assigned to the discharge of plaintiff's tax liabilities. The basis for such claim, as assigned therein by the plaintiff, was that the plaintiff was "not liable for any amount as a transferee of property from any taxpayer at any time." Upon the rejection of that claim this action was commenced.

The defendant, by its motion, contends that the admitted compromise agreement and settlement between the parties, in which the plaintiff specifically waived any right to sue for a refund, bars the plaintiff from recovery herein and requires summary judgment in its favor. I agree.

It is well-settled that a compromise settlement of tax liabilities, conforming to the requirements of Section 7122, 26 U.S.C.A., is a contract, governed by the rules applicable to contracts generally;[5] and its terms are to be enforced as expressed, unless they violate some public policy. And this is true, even though it later appears no tax was due. Seattle-First Nat. Bank v. United States (D.C.Wash.1942) 44 F. Supp. 603, 610, aff. 136 F.2d 676, aff.

---

4. Apparently, since time for appealing had not expired in the injunction suit, the Department of Justice retained control over the proceedings and the approval of the Attorney General was required for any compromise settlement.

5. United States v. Lane (C.C.A.Fla.1962), 303 F.2d 1, 4; Lowe v. United States (D.C.Mont.1963), 223 F.Supp. 948, 949; United States v. McCue (D.C.Conn.1959), 178 F.Supp. 426, 432.

321 U.S. 583, 64 S.Ct. 713, 88 L.Ed. 944. The instant settlement includes as one of its express terms and conditions, the explicit agreement of the plaintiff, that "No claims or suits for refund will (would) be made" by it. Such a condition does not transgress public policy. There is nothing improper or even unusual in such a condition in a tax settlement agreement. In varying phraseology, such a condition is a standard provision in tax settlements; and, where the settlement is properly authorized, the provision has been enforced without question. Monge v. Smyth (C.C.A.Cal. 1956), 229 F.2d 361, 368, cert. den. 351 U.S. 976, 76 S.Ct. 1055, 100 L.Ed. 1493; Hamilton v. United States (1963) 324 F.2d 960, 964–965, 163 Ct.Cl. 116. The plaintiff does not contend that this settlement was not properly authorized. The affidavit of the District Director shows that the settlement was authorized by the Attorney General, who, since these cases had been referred to the Department of Justice, was the proper official under Section 7122 to approve and authorize it on behalf of the Government.[6] It accordingly follows that the voluntary renunciation by the plaintiff in its settlement offer of any right either to claim or to sue for a refund forecloses it from the maintenance of this suit.

Even were there some defect in the settlement agreement—even were it not properly authorized by the Attorney General—[7] the plaintiff would be estopped, by its express renunciation of a right to institute this suit for refund, from maintaining this action. It is true that there is a sharp conflict in the decisions on the necessary elements of an estoppel in tax refund cases. Under one line of authorities, permitting the statute of limitations to run against the affirmative assertion of the tax liability in reliance on the finality of an imperfect settlement is deemed such prejudice to the Government as to support an equitable estoppel against the maintenance of a suit for refund by the taxpayer.[8] The

---

6. Compliance is presumed in the absence of a contrary showing. Anderson v. P. W. Madsen Inv. Co. (C.C.A.Utah 1934) 72 F.2d 768, 771. Or, as phrased in Stearns Co. v. United States (1934) 291 U.S. 54, 64, 54 S.Ct. 325, 78 L.Ed. 647, there is always a "presumption of official regularity".

 See, also, Hamilton v. United States (1963) 324 F.2d 960, 964, 163 Ct.Cl. 116:

 "Plaintiffs (taxpayers) have not shown us that the requirements of section 7122 have not been met. Before their claim for refund can be considered, in face of the unequivocal terms of the compromise agreement and the express prohibition against the filing or prosecution of a claim for refund, they must show that this section has not been complied with. This they have not done. On the contrary, on the face of the documents that have been exhibited, it would seem that the section has been complied with."

7. See 11 A.L.R.2d 913:
 "There are several thousand cases each year in which there are proposed deficiencies and which are suitable material for a formal closing agreement such as will preclude the reopening of the question of tax liability under § 3760 of the Internal Revenue Code, and there are numerous cases in which a final compromise agrement under § 3761 would be the ideal way of closing the matter. But the administrative burden placed on the Secretary and Undersecretary of the Treasury by these statutes makes it impossible for them to handle more than a small proportion of the cases and the remainder must be closed by agents not authorized by law to enter into binding agreements. The Commissioner has attempted to devise an informal type of agreement which will be binding on both parties and end controversies, but without success. See Dean Griswold's article in 57 Harv.L. Rev. 912."

8. Daugette v. Patterson (C.A.Ala.1957) 250 F.2d 753, 757, cert. den. 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580; Cain v. United States (C.A.Ark.1958) 255 F.2d 193, 198–199; Guggenheim v. United States (1948) 77 F.Supp. 186, 111 Ct.Cl. 165, cert. den. 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, reh. den. 336 U.S. 911, 69 S.Ct. 513, 93 L.Ed. 1075; Girard v. Gill (D.C.N.C.1956) 142 F.Supp. 770, 772, aff. 243 F.2d 166; Schneider v. Kelm (D.C.Minn.1956) 137 F.Supp. 871, 875–

other view is that, in tax refund cases, an estoppel will not arise merely because the statute of limitations, in reliance on the agreement, has matured as a bar to any claim by the Government; there must have been an actual misrepresentation by the taxpayer, inducing the prejudicial inaction of the Government.[9] But to a substantial extent this second view is influenced, it would appear from observations made in a number of opinions sustaining such view, by a circumstance peculiar to tax refund cases. In any such action, the Government, even though the statute has run, may, by way of equitable recoupment, set-off its otherwise barred claim against that asserted by the taxpayer. Cuba Railroad Co. v. United States (C.C.A.N.Y.1958) 254 F.2d 280, 282, cert. den. 358 U.S. 840, 79 S.Ct. 64, 3 L.Ed.2d 75. In such a situation, of course, the Government cannot be prejudiced; and it is that want of prejudice which lies at the heart of this "strict" rule as to estoppel in tax refund cases.[10]

But, even in those jurisdictions in which the "strict" rule is applied, it would seem that where there is not a full right of set-off or recoupment by the Government, an estoppel based upon the maturing of the statute of limitation against suit by the Commission, in reliance of the agreement, may properly arise. Thus, where the settlement agreement (invalid for want of approval as required under Section 7122) represents a so-called "package deal", involving several taxpayers in addition to the plaintiff, and the Government, in reliance on the settlement, has permitted the statute to run against the claims against the taxpayers involved in the settlement other than the plaintiff-taxpayer and cannot recoup, through its right of set-off, against these other taxpayers in the suit filed by the plaintiff-taxpayer,[11] then the running of the statute will bar, by way of an equitable estoppel, any right of the plaintiff-taxpayer to violate his agreement. This principle is illustrated in the well-reasoned opinion in Girard v. Gill (D.C.N.C.1956) 142 F.Supp. 770, 772, aff. 243 F.2d 166. And this principle is applicable to this case.

The Government had tax assessments against the plaintiff and some fourteen other persons and corporations. This settlement agreement was made on behalf of all of them and settled, by compromise, the tax claims for the years stated against all of them. The Government relied on the agreement, particularly the agreement not to seek a refund, and permitted the statute to run against its claims against each of the fifteen

876, aff. 237 F.2d 721; Lowe v. United States (D.C.Mont.1963) 223 F.Supp. 948, 949.

9. Joyce v. Gentsch (C.A. Ohio, 1944) 141 F.2d 891, 896–897; Bank of New York v. United States (C.A.N.J.1948) 170 F.2d 20, 24; Bennett v. United States (C.A. Ill.1956) 231 F.2d 465, 467; Cooney v. United States (D.C.N.J.1963) 218 F. Supp. 896, 898; Hamil v. Fahs (D.C. Fla.1955) 129 F.Supp. 837, 841–842; Steiden Stores v. Glenn (D.C.Ky.1950) 94 F.Supp. 712, 721.

In a note, Morris White Fashions, Inc. v. United States (D.C.N.Y.1959) 176 F.Supp. 760, 766, lists Girard v. Gill (C.C.A.N.C.1958) 261 F.2d 695, 698–700, as indicative of a leaning in this direction by this Circuit.

See, also, Finality of Administrative Settlement in Tax Cases, 57 Harv.L.Rev. 912 (1944).

10. In Morris White Fashions, Inc. v. United States (D.C.N.Y.1959) 176 F. Supp. 760, 765, the Court, after an exhaustive review of the conflicting authorities, thus stated the reasoning behind the strict rule:

"The key factor ignored in the Guggenheim and Cain v. United States decisions, supra, is that the defense of equitable recoupment may be pleaded by the Government as a set-off to plaintiff's claim for refund, even though the statute of limitations has run against the Government. Such a defense is never barred by the statute of limitations, so long as the main action is timely."

See, also, Joyce v. Gentsch (C.C.A.Ohio 1944) 141 F.2d 891, 895–896.

11. That the right of recoupment is strictly limited to the actual parties to the action, see Smith v. United States (C.C.A.Md. 1966) 373 F.2d 419, 421.

taxpayers involved in the settlement; indeed, as to some of such taxpayers (but not including the plaintiff) it abandoned proceedings in the Appellate Division and consented to adverse decrees in the Tax Court. Only one of the taxpayers, the plaintiff, has sued for a refund. The Government has, by operation of the statute of limitations, thus lost its right to collect from the fourteen other taxpayers embraced in the settlement and has no right of recoupment against them in this action. This prejudice is sufficient to support an estoppel under either statement of the essential elements of an estoppel in a tax refund action, as set forth in the two lines of authority outlined above.

Actually, as has been noted already, the plaintiff does not challenge the settlement or question its validity, including the prohibition against a suit for refund. The theory of its claim follows an entirely different line. It points to its request of the District Director that "the $1,192,405.43 paid by Cooper Agency (be applied) to the payment of any of these transferee claims you choose; however, we assume that you will abate the excessive claims above this amount, under Section 6404 of the Internal Revenue Code, so that your records will show full payment of all unabated, transferee claims against Cooper Agency, *which will of course be in accordance with our agreement of November 24, 1965.*" (Italics added.) This request followed the language of paragraph 4 of the compromise agreement. The District Director agreed to this request. As a result of these allocations, the plaintiff argues in its brief herein that "all unabated assessments against the plaintiff, totaling $1,192,405.43, were paid in full, and not compromised or settled", and that, so far as any valid assessments against it were concerned, there was no compromise, it has paid all it was claimed it owed. It would thus deny any application of the conditions of the settlement agreement to its suit. Accordingly, it asserts the basis for the defendants' motion for summary judgment (i. e., the settlement agreement) passes from the picture, and the plaintiff is entitled to contest in this action the validity of the tax assessments asserted originally against it.

Such argument overlooks the fact that the payment of $1,250,000 was made pursuant to and as an incident of the compromise agreement involving well over $9,000,000 in assessments against fifteen separate taxpayers, including approximately $1,900,000 in assessments against the plaintiff, and that the allocation of such payment among the assessments against these fifteen parties was, by the plaintiff's own language, "in accordance with our agreement of November 24, 1965". It is impossible, under these circumstances, to isolate that portion of the settlement figure, which, for bookkeeping purposes, was thereafter allocated to the tax liabilities of the plaintiff from the over-all compromise agreement covering all the taxpayers. The mere fact that, as a result of the manner of application and of bookkeeping entries, some of the assessments against the plaintiff were marked paid in full and others abated in full—not, on the basis of the respective merits of the assessments but simply because plaintiff requested it that way—cannot obscure the fact that the payment, however applied, was a portion of a single settlement figure of $1,250,000 and was made as an essential part and parcel of the compromise agreement, indeed, of section 4 of that very agreement, under which the Government released tax assessments in excess of $9,000,000. The argument of the plaintiff is thus based on fiction, not reality. It cannot, by such an argument, escape from the conditions it proposed and the defendant accepted.

Plaintiff's argument really boils down to the contention that, by its inducing the District Director to apply the compromise payment in a particular way on the books of the Commissioner, it could transform what was a part payment, made by way of a compromise settlement, into a payment in full of a portion

of the assessments. Such an agreement would make a nullity of the settlement and the intention of the parties and would invest a bookkeeper in the office of the District Director with the power to create a liability for refund on the part of the Government, where, by the very agreement under which the payment was made by authority of the Attorney General, there was no such right. This would be creating a right where none existed before. It would elevate form over substance.

 Equally without merit is plaintiff's point that its compromise payment was made under duress. One who seeks to void a contract for duress must show that he was without other remedy. This plaintiff had two plain remedies whereby it could legally have contested the validity of the assessments against it. By acting in due time, the plaintiff could have tested the noticed deficiencies in the Tax Court, as Judge Martin remarked in 235 F.Supp. 283. The plaintiff was not ignorant of this right. Several of the parties involved in this settlement, including this plaintiff, and represented by the same counsel as appears for the plaintiff here followed this procedure in connection with earlier assessments against the plaintiff and parties associated with it. See, Biltmore Homes, Inc. v. C. I. R. (C.A.S.C. 1961), 288 F.2d 336, cert. den. 368 U.S. 825, 82 S.Ct. 46, 7 L.Ed.2d 30, and Cooper's Estate v. C. I. R. (C.A.S.C.1961), 291 F.2d 831, cert. den. 368 U.S. 919, 82 S.Ct. 241, 7 L.Ed.2d 135. Perhaps its previous lack of success under this procedure induced the plaintiff to avoid this remedy. But, even after it had foregone this remedy, the plaintiff could have paid the assessments against it. It is true that this would have required a payment greater than that paid under the compromise agreement (assuming, of course, that the plaintiff's share of the compromise payment was $1,-192,405.43). It may have been a hardship, but, "Hardship in raising money

with which to pay taxes is now common to all taxpayers", (Reams v. Vrooman-Fehn Printing Co. (C.A.Ohio 1944), 140 F.2d 237, 241) and does not represent duress.[12] The plaintiff chose to follow neither of these remedies; it compromised the assessments. Under such circumstances, the plaintiff may not avoid its compromise settlement. Little v. Bowers (1889), 134 U.S. 547, 556, 10 S. Ct. 620, 33 L.Ed. 1016; cf., however, Girard v. Gill (C.C.A.N.C.1958), 261 F. 2d 695, 699. Moreover, even if this right existed on the part of the plaintiff, it is ordinarily the rule that the plaintiff is required promptly to disaffirm the agreement and, as a condition of relief, restore the opposite party to its former position. Without question, the plaintiff in this case could not restore the defendant to the position it enjoyed against all the fifteen taxpayers involved in the settlement. The defendant has lost its claims against these other taxpayers and the plaintiff cannot revive such claims.

While unnecessary to the decision I have reached, one additional argument of the plaintiff might be noted. Even if sound, it probably would not invalidate the settlement. It would indicate, however, that the Government had been unfair in its dealings with the plaintiff. Thus, the plaintiff argues that, as evidenced by an admission extracted from the defendant by one of plaintiff's interrogatories, the total outstanding assessments against the plaintiff on September 16, 1963, were only $463,118.55. Despite this, the defendant, through threat of levies, forced the plaintiff to pay $1,192,405.43 in settlement of such assessments. This is not the full story, though; and the facts will not support the plaintiff's contentions in this regard. On September 16, 1963, the defendant issued against the plaintiff additional notices of deficiencies in the aggregate of $1,412,522.58, plus interest. Before the plaintiff filed its injunction suits, these notices had matured into assess-

12. Walker v. Alamo Foods Co. (C.A.Texas, 1927), 16 F.2d 694, cert. den. 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320.

ments. As a consequence, the assessments outstanding against the plaintiff at the filing of its injunctive suits were $1,508,033.10, by the allegations of plaintiff's own complaint in the second injunction suit. What was involved in the subsequent settlement was thus not assessments in the amount of $463,-118.55 but assessments aggregating $1,795,466.63,[13] against the plaintiff. Plaintiff would apparently disregard these additional assessments because, in its view, the notices of deficiencies were defective. However, this objection of the plaintiff had been raised and decided adversely to it in both of the injunction suits. Moreover, the plaintiff would completely disregard the fact that. the compromise settlement covered not only its one tax liability but also those. of fourteen other parties and that the aggregate tax liabilities involved totaled well over $15,000,000.00.

The motion of the defendant for summary judgment herein is accordingly granted.

And it is so ordered.

---

13. The difference between this item (i. e., $1,799,466.63) and that stated in the second injunction suit (i. e., $1,508,033.-10) was apparently represented by additional interest and penalties accruing subsequent to the date referred to in the injunction suit.