**D. D. I., INC., et al.**

v.

**The UNITED STATES.**

No. 258-71.

United States Court of Claims.

Oct. 13, 1972.

W. R. Anchors, attorney of record, for plaintiffs. Smathers & Thompson and Richard H. Hunt, Jr., Miami, Fla., of counsel.

Michael H. Singer, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller and Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

Plaintiffs are suing for a refund of interest paid as part of a settlement of accumulated earnings taxes.

After audit, the Commissioner of Internal Revenue proposed to assess accumulated earnings taxes[1] of varying amounts against the plaintiffs. As a result of negotiations between plaintiffs and the Commissioner, it was agreed that the years under audit would remain "in suspense" until the outcome of three tax refund suits involving identical facts and circumstances with three other corporations.

On April 16, 1968, counsel for the litigating corporations (who was also counsel for plaintiffs) proposed to the Assistant Attorney General a settlement of the three pending suits. The offer however was conditioned upon agreement by the Commissioner to settle the plaintiffs' cases at the same time and on the same basis (twenty-five per cent of the proposed assessment plus interest).

After consultations between the Justice Department and the Commissioner, the settlement offer was accepted on December 17, 1968 conditioned on the

. . . payment of the deficiencies of the corporations not in suit within thirty days of verification of the amounts thereof by the service under the terms of settlement, plus interest.

---

1. Int.Rev.Code of 1954, § 531. All Section references hereinafter are to the Internal Revenue Code of 1954.

On February 17, 1969, the Commissioner prepared and submitted verified deficiencies to plaintiffs on Form 870 in accordance with the settlement. On the same date plaintiffs duly executed and delivered to the Commissioner these Forms 870. Each plaintiff, except Volusia Locations, Inc., received a Notice and Demand dated April 18, 1969, for payment of the agreed deficiencies along with interest computed from the due date of each plaintiff's tax return for the year in respect to which the accumulated earnings tax was assessed. Each of the plaintiffs, except Volusia, paid the full amount of tax and interest shown on its Notice and Demand on April 24, 1969.[2]

No closing agreement or other document purporting to bind the Government or plaintiff was executed.

On July 18, 1969, pursuant to the Settlement Agreement, the three refund suits then pending were dismissed on stipulation of the parties.

On January 23, 1970, this court issued its opinion in Motor Fuel Carriers, Inc. v. United States, 420 F.2d 702, 190 Ct.Cl. 385 (1970), which held that a taxpayer's liability for interest on accumulated earnings tax commences ten days after the date shown on the Notice and Demand, and not on the due date of the tax return for the taxable year in respect to which the accumulated earnings tax was assessed.

Upon learning of *Motor Fuel Carriers,* plaintiffs filed claims for refund of the deficiency interest paid on the Section 531 compromise. These claims for refund were disallowed by Notices of Disallowances dated August 21, 1970 and September 3, 1970. Suit was thereafter timely instituted in this court.

The matter is presently before this court on motions for summary judgment by both parties. We agree with the position of the defendant.

There are three primary issues involved in this case:

1) Whether the Attorney General had the authority to enter into a compromise with plaintiffs;

2) Whether, assuming there were valid informal compromises, plaintiffs are estopped from opening these agreements; and

3) Whether the interest payments were part of the compromise.

■ Plaintiffs first contend that the Attorney General had no authority to enter into a compromise with them, since the statute merely authorizes him to "compromise any . . . case after reference to the Department of Justice for prosecution or defense."[3] An opinion of the Attorney General[4] states that the Attorney General has authority to compromise any matters "germane to the case which the Attorney General may find it necessary and proper to consider . . . ." This authority has been exercised for almost forty years. It is a reasonable interpretation of Section 7122, which divides the compromise authority between the two departments. We see no compelling reason now to disapprove of this administrative practice.

■ Since the plaintiffs in this case required the Attorney General to settle their cases as a basis for settling the tax refund suits (which were undeniably within the jurisdiction of the Attorney General) it may be said that it is the plaintiffs themselves who made their cases "germane." Furthermore, plaintiffs do not contest the fact that the Treasury Department authorized the Department of Justice to make this settlement.

On the basis of the above, we find that plaintiffs' case is germaine to the refund suits. We, therefore, hold that the At-

---

2. In the case of Volusia Locations, Inc., payment was effected through an offset of an overassessment from the calendar year 1961 arising from a net operating loss carryback from the calendar year 1964.

3. § 7122(a).

4. 38 Op. Att'y Gen. 98, 102 (1934).

torney General was acting within the purview of his authority when the settlements were made.

Plaintiffs next assert that either side was free to open the case because the settlement was made only pursuant to Forms 870 and letters between the parties. There was no formal closing agreement, which plaintiffs contend is necessary in order to make a binding settlement. The Supreme Court's decision in Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 73 L.Ed. 379 (1929) made it clear that the exact requirements of the Internal Revenue Code had to be followed in order to make a compromise binding on the parties. However, the case left open the question of estoppel to be decided on an individual case basis.

This court has held that where the statute of limitations has run on the collection of further deficiencies between the time an informal compromise agreement was executed and the time the refund claim was filed, the principle of estoppel would prevent the plaintiff from pursuing the matter further. The court said:

> [i]t would obviously be inequitable to allow the plaintiff to renounce the agreement . . . [since] the Commissioner cannot be placed in the same position he was when the agreement was executed. A clear case for the application of the doctrine of equitable estoppel exists . . . .

Guggenheim v. United States, 77 F.Supp. 186, 196, 111 Ct.Cl. 165, 182 (1948), cert. denied, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, rehearing denied, 336 U.S. 911, 69 S.Ct. 513, 93 L.Ed. 1075 (1949).

The *Guggenheim* rationale was successfully overcome by taxpayers in Morris White Fashions, Inc. v. United States, 176 F.Supp. 760 (S.D.N.Y.1959) where that court stated that,

> [t]he key factor ignored in the Guggenheim [case] . . . is that the defense of equitable recoupment may be pleaded by the Government as a

set-off to plaintiff's claim for refund, even though the statute of limitations has run against the Government. . . Clearly equitable estoppel would not be appropriate where the Government could set off against taxpayer's claim an amount sufficient to compensate for its inability to assess additional deficiencies because of the tolling of the statute of limitations.

*Id.* at 765.

However valid the reasoning of *Morris White* might be in a case concerning an informal compromise with a single taxpayer, it is totally invalid when the compromise is a "package deal." Defendant, in this case, cannot open the cases of the litigating corporations even for use as set-offs. In a case similar to ours, a district court, in Cooper Agency v. United States, 301 F.Supp. 871 (D.S.C. 1969), aff'd per curiam, 422 F.2d 1331 (4th Cir. 1970), cert. denied, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970), distinguished *Morris White* by stating that,

> . . . where there is not a full right of set-off or recoupment by the Government, an estoppel based upon the maturing of the statute of limitation against suit by the Commission, in reliance on the agreement, may properly arise.

*Id.* 301 F.Supp. at 877. *Accord,* Cain v. United States, 255 F.2d 193 (8th Cir. 1958); *see also* Girard v. Gill, 142 F. Supp. 770 (M.D.N.C.1956), aff'd per curiam, 243 F.2d 166 (4th Cir. 1957). That situation clearly exists in the instant case.

■ We, therefore, hold that plaintiffs are estopped from opening the compromise agreement entered into between plaintiffs and the Attorney General.

■ The third and last issue is whether the interest was part of the compromise. Plaintiffs contend that they intended to settle their tax liability, but that they only intended to pay "lawful" interest. However, we feel that under a common sense understanding of compro-

mise, it is not possible to believe that plaintiffs entered into a compromise settlement of $652,247.52 and totally ignored the $204,800.00 of interest which they were to pay.

This large amount of interest was assumed by both plaintiffs and defendant to be the correct amount due. Plaintiffs admit that at the time of the compromise they believed that interest was to be computed from the filing dates of the tax returns. Not until our decision in the *Motor Fuel Carriers* case did plaintiffs think otherwise.[5]

The law to be applied in the instant case is the law as the parties thought it to be at the time of the settlement. Even if it is subsequently determined that that law would not have required payment, the settlement will be deemed binding on the parties. Trumbull Steel Co. v. United States, 1 F.Supp. 762, 76 Ct.Cl. 391 (1932). This court has clearly stated:

> In testing the validity of the settlement we must consider the circumstances and the law *then* applicable thereto. [emphasis added].

*Id.*, 1 F.Supp. at 766, 76 Ct.Cl. at 400. *Accord,* Bankers' Reserve Life Co. v. United States, 42 F.2d 313, 70 Ct.Cl. 379, cert. denied, 282 U.S. 871, 51 S.Ct. 77, 75 L.Ed. 769 (1930); *see* Hord v. United States, 59 F.2d 125, 75 Ct.Cl. 516 (1932).

The Attorney General properly entered into a compromise with plaintiffs, as part of a settlement with the litigating corporations. Plaintiffs are now estopped from opening that compromise. This compromise included payment of interest computed according to the law as both parties thought it to be at the time of the compromise.

Accordingly, plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. Plaintiffs' petition is hereby dismissed.

---

5. The present case is clearly distinguishable from those cases which allow a recomputation of interest based upon *Motor Fuel Carriers* because they do not entail compromise settlements between the parties. *See generally* Bardahl Mfg. Corp. v. United States, 452 F.2d 604 (9th Cir. 1971); Ray E. Loper Lumber Co. v. United States, 444 F.2d 301 (6th Cir. 1971); Alexander Proudfoot Co. v. United States, 454 F.2d 1379, 197 Ct.Cl. 219 (1972).